**Reba DOUGLAS, on Behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, et al., Defendants.**

**Civ. A. No. 90–CV–40100–FL.**

United States District Court, E.D. Michigan, S.D., at Flint.

Dec. 9, 1991.

Robert W. Haviland, Asst. U.S. Atty., Flint, Mich., for U.S.

Donna Beauregard, Legal Services, Flint, Mich., Terri L. Stangl, Legal Services, Saginaw, Mich., for plaintiff.

Erica Weiss Marsden, Asst. Atty. Gen., Lansing, Mich., for State of Mich.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court are Cross Motions for Summary Judgment filed by plaintiff and defendant Sullivan. A hearing on this matter was held on November 26, 1991. The dispute is over whether plaintiff was entitled to have her pregnancy-related medical expenses paid by Medicaid, despite her non-cooperation with regard to the paternity of her first child as required for her to receive AFDC payments for her own welfare. On April 16, 1990, the Court granted plaintiff a preliminary injunction, enjoining defendants from interpreting the relevant statutes in such a way as to deny pregnancy-related expenses to pregnant women who have failed to cooperate with regard to the paternity of previously born children but who have cooperated in establishing the paternity of the child *in utero*. The decision was appealed, and the Sixth Circuit remanded the case for consideration of the issue in light of the 1990 statutory amendments. 931 F.2d 56. For the reasons stated below, and those discussed at the hearing, defendant's Motion for Summary Judgment (MSJ) is GRANTED, and plaintiff's Motion is DENIED.

In her brief, plaintiff raises four issues. Plaintiff first argues that she is entitled to receive pregnancy-related medical services under either 42 U.S.C. § 1396a(a)(10)(A)(i)(III) or (IV). Second, plaintiff argues that the cooperation requirement of § 1396k does not apply to persons eligible to receive medical care under § 1396a(a)(10)(A)(i) (I) through (IV).

Third, plaintiff argues that the Congressional intent indicates that Medicaid should be provided to those defined in (I) through (IV) above, regardless of cooperation. Fourth and finally, plaintiff argues that defendant Sullivan's interpretation of the cooperation requirement would violate plaintiff's equal protection rights under the Constitution.

## I

■ ·Plaintiff relies on 42 U.S.C. § 1396a(a)(10)(A)(i) in arguing that she, and similarly situated individuals, are entitled to prenatal, delivery, and postpartum care under Medicaid, despite her ineligibility to otherwise receive AFDC payments for failure to cooperate in establishing the paternity of any previously born child. Plaintiff argues that she is entitled to such welfare payments under 42 U.S.C. § 1396a(a)(10)(A)(i) (III) or (IV). Subclause (III) makes medical assistance available to those "who are qualified pregnant women or children as defined in section 1396d(n) of this title." Plaintiff claims that she meets the definition of subclause (III) (plaintiff's MSJ at 4). Defendant agrees (defendant's MSJ at 9).[1]

Section 1396d(n), in relevant part, provides:

The term "qualified pregnant woman or child" means—

(1) a pregnant woman who—

\* \* \* \* \* \*

(C) otherwise meets the income and resources requirements of a State plan under part A of subchapter IV of this chapter.

42 U.S.C. § 1396d(n)(1)(C). There is no dispute that plaintiff meets the income and resources requirements to qualify for AFDC ("a State plan under part A of subchapter IV"). The reason she is not receiving AFDC is for failure to comply with 42 U.S.C. § 1396k. Her first child receives AFDC, but she does not for failure to coop-

erate in the establishment of paternity. *See* 42 U.S.C. § 1396k(a)(1)(B). Similarly, her second child, regarding whom she did cooperate in establishing paternity, receives AFDC while plaintiff herself does not. The dispute here is whether the failure to cooperate with regard to a previous child should prevent plaintiff from receiving pregnancy care that will affect the welfare of the child *in utero*, who will, eventually, become a ward of the state.

With regard to issue I, the Court finds that plaintiff qualifies under 42 U.S.C. § 1396a(a)(10)(A)(i)(III). Because she is "described" in subclause (III), plaintiff does not qualify under subclause (IV).

## II

The second issue raised by plaintiff is whether the cooperation requirement of 42 U.S.C. § 1396k applies to persons eligible for pregnancy-related medical care under § 1396a(a)(10)(A)(i)(I) through (IV) ("categorically eligible persons"). Plaintiff argues at pages five through six of her brief that the cooperation requirement does not apply to categorically eligible persons. Specifically, plaintiff argues that, since categorically eligible persons receive Medicaid by virtue of their status in another program, the separate requirements of Medicaid (including, presumably, the cooperation requirement) would ·not apply (plaintiff's MSJ at 5). Defendant, however, insists that those individuals receiving AFDC or SSI benefits under subsections (I) or (II) *are* subject to the cooperation requirements of § 1396k, as are those who qualify under subsection (III).

Plaintiff's argument might apply with regard to categories (I) and (II), which, according to plaintiff, describe individuals receiving AFDC and SSI benefits respectively. Categories (III) and (IV), however, do not describe persons otherwise receiving welfare benefits, but rather describe persons by, among other things, income and

---

1. It is noteworthy that, if plaintiff did not qualify for aid under part III, she would qualify under part IV. If she does, as both parties argue, however, qualify under part III, she is precluded from medical care under part IV.

This is so because part IV refers one to the definition at section 1396a(*l*)(1)(A) or (B) which excludes anyone described in section 1396a(a)(10)(A)(i)(I) through (III).

resource criteria (*see* § 1396d(n)(1)(C), and § 1396a(*l*)(1)). Plaintiff attempts to prove her point by stating that cooperation is not a requirement to receive SSI, and that states must automatically provide Medicaid to all SSI recipients (plaintiff's MSJ at 5). That being the case, plaintiff argues, § 1396k does not affect benefits owed to an SSI recipient under § 1396a(a)(10)(A)(i)(II) (plaintiff's MSJ at 5). This argument, however, even if taken as correct, does not logically apply to plaintiff who is not receiving any benefits under any welfare plan. Moreover, if persons qualifying under subclauses (I) through (IV) were categorically not subject to the requirements of § 1396k, then there would be no need for the 1990 amendment to § 1396k(a)(1)(B) excepting those individuals "described in section 1396a(*l*)(1)(A)"—those qualifying under subclause (IV) of § 1396a(a)(10)(A)(i) and not described in any of subclauses (I) through (III).

Applying § 1396k to plaintiff, the Court finds that the plain (albeit hopelessly confusing) language precludes her from the medical benefits sought. The relevant inquiry is whether § 1396k(a)(1)(B), requiring plaintiff "to cooperate with the State (i) in establishing the paternity of *such person (referred to in subparagraph (A))* if the person is a child born out of wedlock," precludes medical assistance to plaintiff because she failed to cooperate in establishing the pregnancy of a previously born child. Subparagraph (A) refers to "the individual *or of any other person who is eligible for medical assistance under this subchapter.*" Plaintiff's first son is eligible, and in fact receiving, medical assistance under AFDC. Plaintiff failed to cooperate in establishing the paternity of that child. Therefore, subparagraph (B) precludes plaintiff from any assistance under the State plan. Although this is a harsh result, and, in essence, harms not only plaintiff but also her soon to be born child, this is the correct reading of the statute.

There is (of course) an exception. If plaintiff "is described in section 1396a(*l*)(1)(A) of this title or [plaintiff] is found to have good cause for refusing to cooperate as determined by the State agen-

cy ..." then the paternity cooperation requirement is excused. 42 U.S.C. § 1396k(a)(1)(B). The State determined that plaintiff failed to cooperate in establishing the paternity of her first child, and this determination was upheld following an administrative hearing (defendant's MSJ at 6, n. 1). Plaintiff has not plead that this failure to cooperate was for good cause. Therefore, we must determine whether plaintiff is described in § 1396a(*l*)(1)(A).

Section 1396a(*l*)(1)(A) provides in relevant part:

(1) Individuals described in this paragraph are—

(A) women during pregnancy ...

\* \* \* \* \* \*

who are not described in any of subclauses I through III of subsection (a)(10)(A)(i) of this section....

Because both parties have argued that plaintiff falls under subclause (III), and because the Court has determined this to be the case, she is not saved by the exception to § 1396k(a)(1)(B). Although plaintiff is not eligible for pregnancy-related medical care because she did not cooperate in establishing the paternity of her first child as required under § 1396k, plaintiff is, nevertheless, *described* in § 1396a(a)(10)(A)(i)(III), which refers to § 1396d(n). Therefore, following the plain language of the statute, plaintiff is not eligible for the currently sought medical assistance.

### III

Plaintiff argues at pages 6 through 10 of her brief that Congressional intent indicates that Medicaid should be provided in this case regardless of cooperation. Plaintiff's argument is predicated upon her being eligible for assistance pursuant to § 1396a(a)(10)(A)(i)(IV) (*see* plaintiff's MSJ at 6–7). As noted in footnote one, however, because plaintiff otherwise is eligible under subclause (III), she is precluded from receiving assistance under subclause IV. If plaintiff did not qualify under subclause III, then she would qualify under IV and, moreover, the cooperation requirement

would be excused because she would satisfy the definition of § 1396a($l$)(1). This, however, is not the case.

## IV

■ Finally, plaintiff argues that defendant's interpretation of the cooperation requirement's application would violate the equal protection guarantees of the Constitution (plaintiff's MSJ at 10 through 12). Thus, the question is whether the relevant statutory scheme, as interpreted by the government, is rationally related to a legitimate government interest. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659, 668–69 (1981). In this inquiry, the government is

> not required to convince the courts of the correctness of [its] legislative judgments. Rather, "those challenging their legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision-maker."

*Id.,* quoting *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

It is the Government's position that its application of the cooperation requirements of § 1396k to otherwise eligible women in group III and not to those in group IV is rationally related to its legitimate interest in preserving the fiscal integrity of the Medicaid program (defendant's MSJ at 11). Defendant explains that group III pregnant women, those defined in § 1396d(n), are eligible for Medicaid payments for services unrelated to pregnancy as well as for pregnancy-related services, while group IV pregnant women, as described in § 1396a($l$)(1)(A) or (B), only receive Medicaid for pregnancy-related services (defendant's MSJ at 11). In enacting the 1990 amendments, which exempted group IV pregnant women from the cooperation requirement, defendant argues that Congress' decision that the fiscal balance tipped in favor of exempting only those pregnant women who would be eligible only for pregnancy-related Medicaid services is rational (defendant's MSJ at 12). Moreover, defendant insists that the decision to continue to subject to the cooperation requirement those pregnant women who would be otherwise eligible for the full range of Medicaid services is also rational (defendant's MSJ at 12).

Plaintiff, on her part, argues that this scheme is not rational because Congress itself has determined that the provision of prenatal care to poor women results in an overall savings with respect to welfare expenditures for their children after birth (plaintiff's MSJ at 11). In fact, Congress determined that each dollar provided for prenatal medical care could result in an overall savings of $3.34 in health care costs for low birth weight infants (plaintiff's MSJ at 11). Plaintiff reasons that, since these babies would be born to impoverished women, each child afflicted with mental retardation, cerebral palsy, or other such ailments would likely become a ward of the state for life. Indeed, the legislative history of the 1990 amendments indicated the House Energy and Commerce Committee's concern for the lack of prenatal care for poor pregnant women:

> Under current law, States must require all applicants for Medicaid, as a condition of eligibility, to cooperate with the State in establishing paternity and in obtaining child support. The State may waive this requirement if it determines that the individual has good cause for refusing to cooperate.

> The Committee is concerned that application of these requirements to women who are applying only for pregnancy-related coverage may discourage many of them from seeking benefits that would give them access to early prenatal care....

> Thus, the cooperation requirement is not only a potential barrier to prenatal care for the high-risk, low-income women that would most benefit from it, but it is also a bureaucratic hurdle that yields absolutely no useful information until months after the prenatal period has ended. The Committee bill therefore exempts pregnant women applying for Medicaid on the basis of their pregnancy

and low income from the cooperation requirements with respect to establishing paternity and obtaining child support.... H.Rep. 881, 101st Cong. 106–07, *reprinted in* 1990 U.S.Code Cong. & Admin.News 2017, 2118–19. Therefore, concludes plaintiff, the governmental interest involved cannot be economic, and it is not rational to exempt group IV women from the cooperation requirement and not those in group III (who are poorer than those in group IV).

However imprudent it may be, the Court finds the statutory scheme as interpreted by the Government to be within the bounds of rationality. While it may result in higher costs of child care after birth, as plaintiff argues, by the 1990 amendments Congress seems to have decided that to encourage women situated as is plaintiff to establish paternity of all children will, in the aggregate, produce a more fiscally sound Medicaid program. Requiring women to cooperate in establishing the paternity of all children born to them will arguably result in the Government having more resources from which to draw for the provision of welfare to those children qualifying for AFDC benefits.

Despite the foregoing, it is troubling to the Court that, while out of Congress' mouth comes words indicating the intent to encourage poor women to apply for pregnancy-related benefits, by the pen Congress amends § 1396k in a manner that denies benefits to many of these same poor women merely because they are otherwise eligible for full Medicaid benefits. The statutory scheme provides an all-or-nothing Medicaid package for group III women, dependent upon their cooperation in establishing paternity of all previously born children, while group IV women have no cooperation requirement because they are eligible only for pregnancy-related services. Nevertheless, while the Court finds that an additional provision providing plaintiff and all similarly situated women the option of applying for only pregnancy-related services would be more effective in attaining Congress' overall goal of fiscal integrity and lowering the rate of infant mortality and morbidity, the Court does not find the statutory scheme to be unconstitutional. As defendant notes:

> Even if the policies underlying § 1396k are somewhat in tension with Congress' objective in expanding Medicaid coverage of pregnant women, the responsibility for balancing those objectives is with Congress (as it seems to have done in enacting the 1990 amendment) and the Secretary (in interpreting the statute) rather than plaintiff or this Court.

(defendant's MSJ at 13). Therefore, however imprudent and unwise, the Court must uphold the statutory scheme as it is rationally related to the Government's stated legitimate interest.

### Disposition

For the foregoing reasons, defendant's Motion is hereby GRANTED, plaintiff's Motion is DENIED, and Summary Judgment is ENTERED in favor of defendants.

SO ORDERED.