990 F.2d 875
 61 USLW 2601, 40 Soc.Sec.Rep.Ser. 568,
Medicare & Medicaid Guide P 41,440
 Reba DOUGLAS, for herself and all others similarly situated,
Plaintiff-Appellant,
v.
C. Patrick BABCOCK, Director of the Michigan Department of
Social Services, and Louis Sullivan, Secretary of
Health and Human Services, Defendants-Appellees.
 No. 92-1231.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 14, 1992.
Decided March 25, 1993.
 
 Edward J. Hoort (argued and briefed), Legal Services of Southern Michigan, Flint, MI, for plaintiff-appellant.
 Erica Weiss Marsden, Office of Atty. Gen. of Michigan, Lansing, MI, Robert Haviland, Asst. U.S. Atty., Flint, MI, Jennifer H. Zacks (argued and briefed), Michael Jay Singer, U.S. Dept. of Justice, Appellate Staff, Civ. Div., Washington, DC, for defendants-appellees.
 Before: MERRITT, Chief Judge; and GUY and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Reba Douglas seeks pregnancy-related Medicaid benefits. She appeals from a grant of summary judgment in favor of the Director of the Michigan Department of Social Services (MDSS) and the Secretary of Health and Human Services (HHS). Douglas presents the following issues on appeal:
 
 
 2
 1. Whether the district court erred in finding Douglas ineligible for pregnancy-related benefits under 42 U.S.C. § 1396a(a)(10)(A)(i)(III) or (IV), in light of a previous determination that she was uncooperative in establishing the paternity of her oldest child; and
 
 
 3
 2. Whether the denial of benefits violated Douglas's right to equal protection under the law.
 
 
 4
 We find the district court correctly determined these issues and we shall affirm.
 
 I.
 
 5
 Reba Douglas, who was pregnant and had two minor children, applied for Medicaid prenatal and postpartum medical benefits in 1989. MDSS denied Douglas's application because the state Aid to Families with Dependent Children (AFDC) agency found she had failed to cooperate, without good cause, in establishing the paternity of her oldest child, Ezekio, who was born in 1979, and assigning rights for his support. This finding of noncooperation was made pursuant to 42 U.S.C. § 602(a)(26) and 45 C.F.R. § 232.12(a), as administered under the Michigan statutory scheme.
 
 
 6
 Douglas filed suit in the United States District Court for the Eastern District of Michigan, contesting the denial of prenatal care for herself and all others similarly situated. After the district court denied class certification, Douglas proceeded individually, contending that the AFDC cooperation and assignment provisions with respect to Ezekio did not apply to eligibility for Medicaid prenatal benefits for her current pregnancy, and that HHS's interpretation of the statute violated her right to equal protection under the law. She sought injunctive relief.
 
 
 7
 The district court granted a preliminary injunction barring MDSS and HHS from "interpreting the assignment and cooperation requirements of the Medicaid statute to bar prenatal ... care of pregnant women who have complied with the requirements with respect to the child in utero."
 
 
 8
 HHS appealed issuance of the injunction to this court.[1] While the appeal was pending, Congress amended 42 U.S.C. § 1396k to exempt a specific group of pregnant women, described in 42 U.S.C. § 1396a(l )(1)(A), from its cooperation requirements. Following oral argument, this court remanded the case to the district court for consideration of the effect of the 1990 amendment.[2]
 
 
 9
 On remand, the district court found that Douglas was not covered by the 1990 amendment. The court granted summary judgment for MDSS and HHS, concluding that "following the plain language of the statute," Douglas was not eligible for Medicaid prenatal care, because she had failed to cooperate. The district court denied Douglas's equal protection claim, finding that the challenged statute was rationally related to a legitimate government interest. 792 F.Supp. 1030. Douglas perfected a timely appeal to this court.
 
 II.
 
 10
 This court reviews a grant of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). This appeal raises a question of statutory construction, a legal question we review de novo. Cf. Smith v. Commissioner, 937 F.2d 1089, 1096 (6th Cir.1991).
 
 III.
 
 11
 Douglas argues that the district court erred in denying her the requested prenatal care benefits because she is "categorically eligible" for Medicaid benefits as a low-income woman under 42 U.S.C. § 1396d(n)(1)(C) pursuant to 42 U.S.C. § 1396a(a)(10)(A)(i)(III) or (IV). Douglas contends that since she meets the income and resource requirements referenced in section 1396d(n)(1)(C), she is eligible for Medicaid prenatal care under section 1396a(a)(10)(A)(i)(III ). Douglas next argues that even if she is ineligible under section 1396a(a)(10)(A)(i)(III ), she is alternatively eligible under section 1396a(a)(10)(A)(i)(IV ).
 
 
 12
 As a final alternative argument, Douglas contends that even if she is determined to be ineligible for Medicaid prenatal benefits under a literal reading of the applicable statutes, she should nevertheless receive the benefits because such a reading would frustrate Congress's intent to provide comprehensive prenatal Medicaid benefits for low-income women. She urges us to not read the statutes "too rigidly" in order to promote what she deems as the more fundamental congressional goal of promoting prenatal care for low-income women.
 
 
 13
 The Secretary contends that under the provisions of section 1396k, Douglas's previous paternity noncooperation makes her ineligible for Medicaid pregnancy-related benefits. He argues that Douglas is ineligible both under part III and part IV of section 1396a. The Secretary maintains that the cooperation requirement of section 1396k applies to all Medicaid applicants unless otherwise specifically excepted, and applicants covered by part III have not been specifically excepted. While the Secretary acknowledges that applicants covered by part IV have been excepted from the cooperation requirement, he argues that Douglas is not a member of this group. Thus, according to the Secretary, Douglas was ineligible for pregnancy-related Medicaid benefits both before and after the enactment of the 1990 amendment to section 1396k.
 
 IV.
 
 14
 Medicaid was established in 1965 as a venture in "cooperative federalism," to "provid[e] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). States that choose to participate in Medicaid are subject to the statutory terms of the program and the regulations promulgated by the Secretary of HHS. 42 U.S.C. § 1396a.
 
 A.
 Section 1396k
 
 15
 Section 1396k of the Medicaid Act provides several mechanisms by which federal and state governments can recoup some of the costs of medical care provided to low-income persons by pursuing third parties legally obligated to pay these medical costs. Section 1396k contains several interrelated provisions designed "[f]or the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients...." 42 U.S.C. § 1396k(a).
 
 
 16
 First, section 1396k "require[s]" "as a condition of eligibility" that all applicants for Medicaid benefits "assign [to] the State any rights, ... the individual [or any other person who receives benefits for whom the applicant has the authority to execute an assignment] may have to support ... and to payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A).
 
 
 17
 Second, section 1396k requires that an applicant "cooperate with the State ... in establishing the paternity" of any "person who is eligible for medical assistance," and who is also "a child born out of wedlock...." 42 U.S.C. §§ 1396k(a)(1)(A) and (B). Until its amendment in 1990, the statute excused noncooperation in only one way: a woman would be excused from cooperating in establishing paternity if she was "found to have good cause." 42 U.S.C. §§ 1396k(a)(1)(B)(i) and (ii).
 
 
 18
 Finally, an applicant is required "to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services...." 42 U.S.C. § 1396k(a)(1)(C). A "good cause" exception is also available here.
 
 
 19
 In sum, in order to be eligible for medical assistance, a Medicaid applicant is required to assist the state by assigning any support and medical payment rights to the state, cooperating with the state in establishing the paternity of any minor child born out of wedlock for whom the applicant is legally responsible, and cooperating with the state in identifying and pursuing any third parties who may be liable to pay for medical care. The latter two requirements can be excused if the applicant is found to have "good cause."
 
 
 20
 MDSS found Douglas noncooperative, without good cause, in establishing the paternity of her oldest child, Ezekio. This determination was upheld on administrative appeal, where Douglas was represented by counsel. Obviously, the question that remains is whether section 1396k's requirements of assignment and cooperation apply to applicants for Medicaid prenatal benefits. Absent an explicit provision to the contrary, there is no reason to think they would not, because as stated above, all applicants "for medical assistance" are "required " to assign rights, and cooperate in establishing paternity and pursuing third parties.
 
 B.
 Sections 1396a(a)(10)(A)(i)(III) and (IV)
 
 21
 Against the backdrop of the assignment and cooperation section of the Medicaid Act are provisions establishing the eligibility requirements for prenatal care. A determination of such eligibility requires an eye-glazing examination of a labyrinthine maze of sections, and seemingly infinite subsections, of the Medicaid Act.
 
 
 22
 We begin in section 1396a(a)(10)(A)(i)(III ) which requires a state plan to make prenatal assistance available for all individuals "who are qualified pregnant women or children as defined in section 1396d(n) of this title...." Section 1396d(n)(1)(C) defines a "qualified pregnant woman" as a pregnant woman who, "otherwise meets the income and resources requirements of a State plan under part A of subchapter IV of this chapter...."
 
 
 23
 Section 1396a(a)(10)(A)(i)(IV ) requires prenatal care for all individuals "who are described in subparagraph (A) or (B) of subsection (l )(1) of this section and whose family income does not exceed the minimum income level the State is required to establish under subsection (1)(2)(A) of this section for such a family...."
 
 
 24
 For purposes of 1396a(a)(10)(A)(i)(III ), it is undisputed that Douglas meets the income and resources requirements under Michigan's AFDC program, a "State plan." She is ineligible for AFDC only because she failed to cooperate in establishing paternity of Ezekio, as required by 42 U.S.C. § 1396k(a)(1)(B). Indeed, her children presently receive AFDC and her unborn child became eligible for AFDC upon his birth.
 
 
 25
 Contrary to her assertions, since Douglas is otherwise eligible under section 1396a(a)(10)(A)(i)(III )'s income and resources requirements, she is precluded from eligibility under section 1396a(a)(10)(A)(i)(IV ), because part IV refers the reader to the definition at section 1396a(l)(1)(A) or (B), which in turn excludes anyone described in sections 1396a(a)(10)(A)(i)(I) through (III). Since Douglas is covered by part III, and thus cannot be covered by part IV, she would seem to be under the overriding assignment and cooperation requirements of section 1396k. It is at this point in our analysis that the amendment to section 1396k is relevant.
 
 C.
 The 1990 Amendment to Section 1396k
 
 26
 Section 1396k was amended in 1990. The relevant text of section 1396k, with the amending language underlined, now reads, in pertinent part:
 
 
 27
 [A] State plan for medical assistance shall--
 
 
 28
 (1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual ..., the individual is required--
 
 
 29
 (A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party;
 
 
 30
 (B) to cooperate with the State (i) in establishing the paternity of such person (referred to in subparagraph (A)) if the person is a child born out of wedlock, and (ii) in obtaining support and payments (described in subparagraph (A)) for himself and for such person, unless (in either case) the individual is described in [42 U.S.C. s] 1396a(l)(1)(A) of this title or the individual is found to have good cause for refusing to cooperate as determined by the State agency....
 
 
 31
 42 U.S.C. § 1396k(a) (emphasis added).
 
 
 32
 Therefore, the 1990 amendment exempts from the cooperation requirement a specific subset of pregnant women described in 42 U.S.C. § 1396a(l )(1)(A). As mentioned previously, this section describes this group of women as:
 
 
 33
 women during pregnancy (and during the 60-day period beginning on the last day of the pregnancy) ... who are not described in any of subclauses (I) through (III) of subsection (a)(10)(A)(i) of this section....
 
 
 34
 42 U.S.C. § 1396a(l )(1)(A) (emphasis added).
 
 
 35
 This is the point at which Douglas is made ineligible for Medicaid prenatal benefits. Because she is described in part III, she is not exempt from the assignment and cooperation requirements of section 1396k. There is simply no rational ground for us to conclude, as Douglas would have us, that those otherwise eligible under part III are somehow exempt from the overriding requirements of assigning rights, cooperating in establishing paternity, and pursuing third parties.
 
 
 36
 Congress could have made the exception established by the 1990 amendment larger, but--rightly or wrongly--chose not to do so. While Congress has expanded Medicaid pregnancy-related care for low-income women, it has not extended it to persons in Douglas's situation. Douglas, as the district court found, is not covered by the 1990 Amendment's exception to the general cooperation requirement.
 
 D.
 Frustrated Congressional Intent
 
 37
 Finally, Douglas argues that Congress could not have intended--given its general policy of favoring prenatal assistance to low-income women--that the statutes in question should be read to deny her pregnancy-related Medicaid benefits. As a fall-back position, Douglas contends that even if the statutes, read properly--that is, as they are written--would deny her eligibility, such a reading would frustrate congressional intent, and this court should read the statute so as to allow benefits. Douglas also relies on Lewis v. Grinker, 965 F.2d 1206 (2d Cir.1992), where the Second Circuit gave undocumented aliens pregnancy-related Medicaid benefits in spite of contrary statutory language.
 
 
 38
 There are several problems with Douglas's contentions. First, it is true that the statutes and relevant legislative history seem to evidence an increasing concern on the part of Congress for prenatal care for poor women. However, the statutes and relevant legislative history evidence an equally strong congressional commitment to the policy of paternity cooperation as a trade-off for the expenditure of massive public funds for medical care for certain of the nation's poor mothers.
 
 
 39
 Second, Medicaid's recent emphasis on the pregnant mother, not the unborn child, as the recipient of prenatal care cuts against Douglas's arguments. As the Lewis court has noted, recent amendments to the Medicaid statute have worked a "shift from a fetal centered to a maternal centered approach to prenatal care." Id. at 1209. This shift necessarily places more emphasis on the mother as the recipient of Medicaid pregnancy-related care. This focus is relevant here because Douglas, not her child, is the person ineligible for Medicaid because of noncooperation. Although the unborn child is one of the intended beneficiaries of Medicaid pregnancy-related care, the threat of losing benefits provides a strong and continuing incentive to the mother to cooperate in establishing paternity for each of her children.
 
 
 40
 In addition, even if we were to determine--and we do not--that the statutes in question were ambiguous, we would nevertheless conclude that Douglas is subject to the cooperation requirement of section 1396k. When a portion of the Medicaid statutes is ambiguous, we give considerable weight to HHS's interpretation because
 
 
 41
 [a]n agency director's interpretation of a statute that his agency is entrusted to administer is entitled to considerable deference and our review of such an interpretation is limited to determining whether the administrator's construction of the statute is 'reasonable.'
 
 
 42
 Chapman v. United States Dep't of Health & Human Services, 821 F.2d 523, 527 (10th Cir.1987). We have also stated that deference to an agency's statutory interpretation is especially important "when an interpretation of a statute involves the reconciliation of conflicting policies." Wayside Farm, Inc. v. United States Dep't of Health & Human Services, 863 F.2d 447, 451 (6th Cir.1988). As the Supreme Court explained in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984):
 
 
 43
 When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 44
 (Footnotes omitted.)
 
 
 45
 As previously noted, Douglas relies on Lewis, 965 F.2d 1206. In Lewis, the court held that undocumented aliens are entitled to pregnancy-related Medicaid benefits, even though, as the court conceded, "the plain language of the statute appears to require denying prenatal care to [these] women...." Id. at 1215. Lewis did not specifically address whether women covered by section 1396a(a)(10)(A)(i)(III) would be eligible in spite of not cooperating, but did effectively hold that residency eligibility (a requirement similar to cooperation) could be demanded in light of section 1396d(n)'s mention of only income and resource eligibility. Douglas urges this court to adopt the general approach of the Lewis court's focus on Congress's unlegislated intent.
 
 
 46
 We have fundamental concerns with the reasoning in Lewis v. Grinker, and its applicability to the case before us. The Second Circuit in Lewis, instead of focusing on applying the applicable law as written by Congress, instead sought to determine what it deemed Congress's broader "intent." Id. at 1208. We do not believe our proper judicial role is to divine Congress's unlegislated intent, or to make the statutes comport with what we believe Congress's preferred policy to be, or what it ought to be. Rather, this court must apply the law as written, even when a result is produced that we may personally question. The perceived legislative history of the relevant statutes should not be allowed to trump duly enacted laws even if the "unenacted" legislative policy, intent, or history is clear. Here, the legislative history is far from clear. We are not confident that it would even be possible to discover what Congress's "intent" was respecting the very detailed and complex question presented by this appeal. We decline to follow the approach of Lewis.
 
 V.
 
 47
 Douglas's second assignment of error is that the district court wrongly granted summary judgment for the defendants on Douglas's constitutional claim. Douglas argues that the government's policy cannot be related rationally to a legitimate interest because the government itself acknowledges that prenatal care is much less expensive to provide than pediatric care for an ill or low-birth weight baby. She also argues that the statute impermissibly discriminates among poor women who receive government medical assistance. Finally, Douglas argues that in this case, establishing the paternity of Ezekio would not reduce the government's outlay for her unborn child, because Ezekio's father has no financial responsibility for supporting the unborn child. Douglas argues that HHS's interpretation of the paternity cooperation requirement violates the Equal Protection Clauses of the Fifth and Fourteenth Amendments because it creates impermissible classifications among low-income pregnant women.
 
 A.
 
 48
 Our constitutional review of Congress's " 'decisions to spend money to improve the general public welfare in one way and not another,' " is particularly deferential. Bowen v. Gilliard, 483 U.S. 587, 598, 107 S.Ct. 3008, 3015, 97 L.Ed.2d 485 (1987) (citations omitted). As the Supreme Court has noted, this deferential standard of review
 
 
 49
 is premised on Congress' 'plenary power to define the scope and the duration of the entitlement to ... benefits, and to increase, to decrease, or to terminate those benefits based on its appraisal of the relative importance of the recipients' needs and the resources available to fund the program.'
 
 
 50
 Id. (quoting Atkins v. Parker, 472 U.S. 115, 129, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985)). " 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' " Id., 483 U.S. at 601, 107 S.Ct. at 3017 (quoting McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)). In order to survive an equal protection challenge, a statutory scheme that makes classifications based on income, as interpreted by the government, need only "be rationally related to a legitimate governmental interest." Harris, 448 U.S. at 326, 100 S.Ct. at 2693. "[W]e cannot, in the name of the Constitution, overturn duly enacted statutes simply 'because they may be unwise, improvident, or out of harmony with a particular school of thought.' " Id. (quoting Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955)).
 
 B.
 
 51
 Douglas's policy critiques do not aid her equal protection theory. In spite of Douglas's arguments, the government could rationally conclude that--in the aggregate--requiring low-income pregnant women to cooperate in establishing paternity for children born out of wedlock makes more money available for all Medicaid recipients by making it easier to find putative fathers who should pay medical expenses. Among these Medicaid recipients would be children and "cooperative" pregnant women. While the government's interpretation of the cooperation requirement is not obviously perfect social policy, it is not irrational.
 
 
 52
 There may be better ways to lower infant mortality among poor women than this statutory scheme provides. However, to fashion such policy from the bench would be to "substitute our personal notions of good public policy for those of Congress...." Schweiker v. Wilson, 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981). HHS's interpretation of the statute does not violate Douglas's equal protection rights.
 
 VI.
 
 53
 For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.
 
 
 54
 MERRITT, Chief Judge, dissenting.
 
 
 55
 The unwed pregnant plaintiff lost pregnancy medical benefits earmarked for women in poverty because she apparently does not know the identity of the father of her 12-year-old first child and, therefore, is unable to cooperate with the authorities to identify him. This result is not what Congress had in mind when it passed the 1990 Amendment on prenatal medical care for so-called "uncooperating" unwed pregnant mothers.
 
 
 56
 Unfortunately, Congress has not written its Medicaid prenatal care statute concerning a pregnant woman's duty to identify the father as clearly as it has written its legislative history. The evidence of legislative intent is clear and unmistakable; the statute itself is at best opaque, at worst incomprehensible. The legislative history of the 1990 Amendment clearly states that the statute changes the law in order to allow pregnant women in poverty to be eligible for prenatal medical care even though they cannot (as in this case) or will not identify the father. The House Report says that "under current law, States must require all applicants for Medicaid, as a condition of eligibility, to cooperate with the State in establishing paternity and in obtaining child support."[1] The Report then says that the legislation changes this rule for pregnant women because "the Committee is concerned that application of these requirements to women who are applying only for pregnancy-related coverage may discourage many of them from seeking benefits that would give them access to early prenatal care." Id.
 
 
 57
 The Report then makes it abundantly clear that it is changing the old rule which denies eligibility for non-cooperating pregnant women:
 
 
 58
 The Committee bill, therefore, exempts pregnant women applying for Medicaid on the basis of their pregnancy and low income from the cooperation requirements with respect to establishing paternity and obtaining child support. The provision is effective on enactment.
 
 
 59
 Id. at 2119.
 
 
 60
 Without this statement of purpose in the legislative history, an accurate analysis of the statute is almost impossible, for the convoluted statutory language is a puzzling jumble of words, exceptions, exceptions to exceptions, and exceptions to exceptions to exceptions, requiring as the Court says, "an eye-glazing examination of a labyrinthine maze of sections, and seemingly infinite subsections, of the Medicaid Act."[2] Certainly the "plain-meaning" rule has no application here.
 
 
 61
 My colleagues have analyzed the 1990 Amendment without regard to its above-stated purpose, as though legislative history and evidence of intent have now become irrelevant in complex matters of statutory interpretation. This leads my colleagues into three errors. The first is that they do not state or discuss the above language of the legislative history setting out a clear legislative purpose. Second, this negative approach to legislative history causes them to parse the statutory words contrary to the legislators' stated intent. Third, this approach, as the Court concedes, leads to a conflict with the Second Circuit in Lewis v. Grinker, 965 F.2d 1206, 1215-20 (2d Cir.1992), which addressed the convoluted Medicaid provisions on prenatal care, and held that examination of legislative evidence of intent is more important than the often incomprehensible language of the sub-subsections and cross-references of the statute itself.
 
 
 62
 The 1990 Amendment in effect injected into the middle of a subsection the words "unless (in either case) the individual is described in section 1396a(l )(1)(A)" after statutory language that requires an unwed mother seeking benefits to help the State establish paternity.[3] The cross-referenced section, § 1396a(l )(1)(A), which embodies the amendment simply says: "women during pregnancy (and during the 60-day period beginning on the last day of the pregnancy)". If we go this far and no further, there is no problem. The language and meaning of the statute coincide exactly with the expressed intent in the legislative history: Poor but non-cooperating pregnant women are entitled to prenatal pregnancy medical benefits. The problem is that there is a confounding dangling modifier following three sub-subsections later which takes this meaning away. The entire subsection is as follows with the short sub-subsection cross-referenced by the Amendment in capital letters and the confounding dangling modifier in italics:
 
 
 63
 (l ) Description of group
 
 
 64
 (1) Individuals described in this paragraph are--
 
 
 65
 (A) WOMEN DURING PREGNANCY (AND DURING THE 60-DAY PERIOD BEGINNING ON THE LAST DAY OF THE PREGNANCY),
 
 
 66
 (B) infants under one year of age,
 
 
 67
 (C) children who have attained one year of age but have not attained 6 years of age, and
 
 
 68
 (D) children born after September 30, 1983, who have attained 6 years of age but have not attained 19 years of age who are not described in any of subclauses (I) through (III) of subsection (a)(10)(A)(1) of this section and whose family income does not exceed the income level established by the State under paragraph (2) for a family size equal to the size of the family, including the woman, infant, or child.
 
 
 69
 The dangling modifier takes the medical benefits away because, according to my colleagues, the plaintiff is by definition a "pregnant woman" otherwise qualified, "described" in the cross-referenced section 1396a(10)(A)(i)(III). Thus the Court uses the dangling modifier to read the "pregnant woman" exception inserted by the 1990 Amendment out of the law. The only way to make the Amendment consistent with the stated legislative intent is to use only (l )(1)(A) in defining pregnant women, not the dangling modifier 44 words later.
 
 
 70
 The Court also ignores a further problem raised by its circular argument. In holding that the plaintiff is barred from receiving benefits by the dangling modifier, the majority concludes that Congress intended for two classes of women, those described in subparagraphs (III) and (IV) of subsection 1396a(a)(10)(A)(i), to be treated differently: Group III women are denied benefits, and Group IV women may receive them.[4] But this interpretation of the statutory scheme excludes the most needy non-cooperating women while providing benefits to those with more resources, arguably raising an Equal Protection problem, since no discernible rational purpose has been articulated for such a perverse result.
 
 
 71
 Because the Court's circular interpretation is not required by the statutory language, does not comport with the expressed legislative intent, and does not avoid Constitutional issues, I dissent.
 
 
 
 [1]
 The state of Michigan did not participate in that appeal and is not participating in the current appeal. Michigan has taken the position that it would pay the benefits in question if HHS's position did not deny the state federal reimbursement
 
 
 [2]
 Douglas v. Babcock, 931 F.2d 56 (6th Cir.1991) (order)
 
 
 [1]
 H.Rep. No. 101-881, 101st Cong., 2d Sess. 106-07 (1990), reprinted in 1990 U.S.S.C.A.N. (104 Stat.) 2017, 2118
 
 
 [2]
 Many other Courts have made similar observations about the Medicaid statute, particularly the prenatal provisions. See the cases and quotations on this subject collected in Lewis v. Grinker, 965 F.2d 1206, 1216 (2d Cir.1992) ("Within this contorted scheme, few areas are more complex than the coverage of prenatal care")
 
 
 [3]
 Subsection 1396k(a)(1) as amended (with the new part italicized) now requires the beneficiary:
 (B) to cooperate with the State (i) in establishing the paternity of such person (referred to in subparagraph (A)) if the person is a child born out of wedlock, and (ii) in obtaining support and payments (described in subparagraph (A)) for himself and for such person, unless (in either case) the individual is described in section 1396a(l)(1)(A) of this title or the individual is found to have good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary, which standards shall take into consideration the best interests of the individuals involved.
 
 
 [4]
 Group III individuals are "qualified pregnant women or children as defined in section 1396d(n) of this title." Section 1396d(n), in turn, refers to "a pregnant woman who ... otherwise meets the income and resources requirement of a State plan under part (a) of subchapter IV of this chapter ..." (emphasis supplied). Group IV individuals are those "who are described in subparagraph (A) or (B) of subsection (l )(1) of this section and whose family income does not exceed the minimum income level the State is required to establish under subsection (l )(2)(A) of this section for such a family...." Thus, Group III women may not exceed either income or resource standards, but Group IV women are required only to meet the income restrictions