Jodi PERRY, Individually, and on behalf of all others similarly situated, Plaintiff,

v.

Michael DOWLING, individually and in his official capacity as Commissioner of the New York State Department of Social Services; and Joan Sinclair, as Commissioner of the Allegany County Department of Social Services, Defendants.

No. 93–CV–541C.

United States District Court, W.D. New York.

June 7, 1995.

Southern Tier Legal Services (Mark H. Wattenberg, and David B. Pels, of counsel), Bath, NY, and Greater Upstate Law Project (June Castellano, and Ellen Yacknin, of counsel), Rochester, NY, for plaintiff.

Dennis C. Vacco, Atty. Gen., (Mark R. Walling, Asst. Atty. Gen., of counsel), Buffalo, NY, for defendants.

## DECISION AND ORDER

CURTIN, District Judge.

### BACKGROUND

Plaintiff Jodi Perry brings suit on behalf of herself and all similarly situated persons against defendant Michael Dowling, individually and in his capacity as Commissioner of the New York State Department of Social Services, and defendant Joan Sinclair, individually and in her capacity as Commissioner of the Allegany County Department of Social Services ("DSS"). Plaintiff claims that the defendants violated 42 U.S.C. § 1396k(a)(1) and her Fourteenth Amendment right to due process by conditioning her receipt of Medicaid benefits after the birth of her child, Thomas English III, on her willingness to cooperate with the agencies in recouping the costs of the pregnancy-related medical services from the child's father, Thomas English, Jr. Perry now moves for class certification and summary judgment, seeking declaratory and injunctive relief.

Defendants Dowling and Sinclair initially moved for partial dismissal on the pleadings. After conducting a limited amount of discovery, the defendants filed a cross-motion for summary judgment on both causes of action. They claim that the legislative intent of Congress in exempting women such as the plaintiff from the cooperation requirement extends only to the time of pregnancy and 60 days postpartum. Since the plaintiff was not asked to cooperate in securing payment from Mr. English until she sought to continue Medicaid coverage for herself and her child after the 60–day postpartum period, no federal statutory, regulatory, or due process violation occurred.

### FACTS

In 1986, Congress expanded Medicaid coverage of pregnancy-related medical care to low-income women who did not otherwise qualify for Medicaid. Women during pregnancy and the 60–day postpartum period who are not eligible under any other Medicaid program and whose income is up to 133 percent of the federal poverty level or, at the State's option, up to 185 percent of the federal poverty level, can apply for limited prenatal and postpartum health care services. 42 U.S.C. §§ 1396a($l$)(1) & (2); 1396a(a)(10)(A)(i)(IV). New York State has exercised the option to provide for coverage up to 185 percent of the federal poverty level.

Medical coverage in this program is different from that offered by conventional Medicaid, in that it is limited to prenatal, delivery, postpartum care, and family-planning services. 42 U.S.C. § 1396a(a)(10). There is no coverage for other kinds of medical care not related to pregnancy or childbirth. However, households which continue to meet the eligibility standards under the Act after the baby's birth may obtain continued health care under Medicaid's Infant Care Program until the infant is one year old. 42 U.S.C. § 1396a($l$)(1)(B).

For conventional Medicaid coverage, eligible applicants must cooperate with the State Medicaid agency to obtain financial support from third parties who may be legally responsible to support them. Until 1990, applicants could be exempted from this requirement only "[if] the individual is found to have good cause for refusing to cooperate...." 42 U.S.C. § 1396k(a)(1)(B) (1986). However, in 1990, Congress amended § 1396k to add another exemption to the "good-cause" exception. Recognizing that the cooperation requirement created a barrier for some pregnant women who seek prenatal care, Congress decided to exempt women who receive

only the limited pregnancy-related medical care coverage, as described in § 1396a(a)(10)(A)(i)(IV). 42 U.S.C. § 1396k(a)(1)(B) (1990).[1]

In October 1991, Jodi Perry applied for Medicaid benefits to cover the costs of her pregnancy-related medical care. She was told she was ineligible for comprehensive Medicaid coverage because of her income level, but could receive pregnancy-related benefits for the duration of her pregnancy, including 60 days postpartum.

After her baby was born, Perry sought and received "recertification" of Medicaid benefits for herself and Thomas III. She alleges that she was told at the time that the only way she could receive coverage was to sign over her right to third party funds and to agree to cooperate with DSS in securing such funds from the baby's father. Perry agreed to these conditions. DSS then commenced child support proceedings against Thomas English, Jr. It filed a modification petition which requested that English pay not only for Medicaid reimbursements made on behalf of Perry and Thomas III after the postpartum period, but also for Perry's pregnancy-related benefits.

## DISCUSSION

### I. Interpretation of Section 1396k(a)(1)

The facts are not in dispute for the purposes of plaintiff's first cause of action. Rather, the parties argue over the interpretation of statute.

Section 1396k(a)(1) states that a State medicaid plan must require an individual, as a condition of eligibility for medical assistance:

(A) to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an

assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party;

(B) to cooperate with the State (i) in establishing the paternity of such person (referred to in subparagraph (A)) if the person is a child born out of wedlock, and (ii) in obtaining support and payments (described in subparagraph (A)) for himself and for such person, unless (in either case) the individual is described in section 1396a(*l*)(1)(A) of this title or the individual is found to have good cause for refusing to cooperate as determined by the State agency ...; and

(C) to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan, unless such individual has good cause for refusing to cooperate as determined by the State agency....

The parties agree that the plaintiff was an individual described in § 1396a(*l*)(1)(A), which covers "women during pregnancy (and during the 60–day period beginning on the last day of the pregnancy)," when she applied for and began receiving benefits. They further agree that the plaintiff has at no time refused to cooperate for good cause as defined by the statute.

Defendants assert in their memorandum in support of partial judgment on the pleadings (Item 11) and again in their brief in support of a motion for summary judgment (Item 35) that the statute entitles the State to require plaintiff to cooperate in seeking reimbursement from third parties for money spent on her pregnancy-related medical care once she recertifies for Medicaid after the 60–day postpartum period. DSS argues that at the time it initiated proceedings to recoup pay-

---

1. The regulations promulgated by the United States Department of Health and Human Services ("HHS") pursuant to this section of the Medicaid Act require a state plan to provide, as a condition of eligibility, that applicants:

Cooperate with the agency in establishing paternity and in obtaining medical support and payments, unless the individual establishes

good cause for not cooperating, and except for individuals described in section 1902(*l*)(1)(A) of the Act (poverty level pregnant women), who are exempt from cooperating in establishing paternity and obtaining medical support and payments from, or derived from, the father of the child born out of wedlock.

42 C.F.R. § 433.145(a)(2).

ments from Mr. English, the father of Perry's infant son, Perry was no longer within the class of women defined by § 1396a(*l*)(1). Thus, she was no longer exempt from the cooperation requirement. The defendants have submitted an affidavit from William L. Hickman, Director of the Office of Medicaid Policy, Medicaid Bureau finding "no violation by New York of 42 U.S.C. § 1396k(a)(1)." Item 44, ¶ 2. Mr. Hickman states that "New York was correct in requiring cooperation from Ms. Perry, as a condition of eligibility, when she subsequently applied for medical assistance for herself and her newborn. Further, once cooperation has been properly obtained and paternity has been established, federal law does not place a limit on the amount of recovery from the father." *Id.,* ¶ 4. However, Mr. Hickman does not affirmatively state that reimbursement of payments made for prenatal care was contemplated by Congress or set forth in the statute.

Plaintiff responds that the defendants' interpretation of § 1396k(a)(1) negates the intent of Congress in enacting § 1396a(*l*). In response to a crisis in availability of adequate health care for poor, pregnant women, Congress expanded Medicaid to provide pregnancy-related medical services to a group of women not otherwise eligible for these government benefits. The legislation was explicit in exempting these women from the disclosure requirement, on the theory that more women would seek and obtain benefits if they were assured that no legal action would be taken against the prospective father as a result. *See* H.Rep. No. 101–881, 101st Cong.2d Sess. 106–07 (1990), *reprinted in* 1990 U.S. Code Cong. & Admin. News 2017, 2118–19. Plaintiff describes the findings of several reports which Congress relied upon in enacting this section of the Medicaid Act to bolster her position. *See* Item 24 at 14–15. The reports consistently emphasize the cost-effectiveness of prenatal care. Plaintiff maintains that Congress considered both the financial savings and the health benefits of broader access to prenatal care in deciding to grant an exemption for women who seek only relatively inexpensive, short-term medical coverage during pregnancy. Based on the studies, which strongly indicate

that more women would avail themselves of prenatal care if not forced to cooperate in obtaining benefits from the prospective fathers, Congress determined that the care these women received as a result of the exemption would prove to be cost-effective to the government in the long term.

Plaintiff argues forcefully that defendants' policy and practice of seeking reimbursement from fathers for medical care previously provided by § 1396a(*l*) imposes the precise barrier to participation in the program that Congress's mandatory "support cooperation" exemption was specifically intended to eliminate. Plaintiff claims that her own situation illustrates that the defendants' interpretation of the statute effectively nullifies the exemption. Mr. English lives with Ms. Perry and their child and contributes to the baby's support. If the defendants can force English to reimburse DSS for the cost of Perry's prenatal care, the parents' ability to provide financially for Thomas III would be significantly impaired. Faced with the imminent loss of potentially thousands of dollars from her household's limited income in this manner, plaintiff asserts that many pregnant women would choose instead to forego participation in the program. Plaintiff offers affidavits from Florence Felsen, a Prenatal Educator, and Sarah Waller, Cortland County Coordinator for the Prenatal Care Assistance Program, asserting that the State's policy of seeking reimbursement serves as a deterrent to applicants for pregnancy-related Medicaid benefits. Item 20, Exs. M & N.

Plaintiff also maintains that there is no express or implied indication in the statute, federal regulations, federal directives, or legislative history entitling a state agency to require former recipients of this program to cooperate in recouping payments. On the contrary, plaintiff argues that seeking recoupment for prenatal care benefits runs completely afoul of Congressional intent, which is plainly ascertained from the legislative materials. She urges that a liberal construction of statutory analysis of the Medicaid Act must be made with respect to pregnancy-related medical care to effectuate the strong Congressional policy towards expanding eligibility in light of the cost-effectiveness

and health benefits of making this care widely available. *Lewis v. Grinker*, 965 F.2d 1206, 1219 (2d Cir.1992). Finally, plaintiff asserts that Mr. Hickman's affidavit is not entitled to deference in this action because it was submitted purely for the sake of litigation. *Lewis*, at 1220.

The defendants respond that the court, in reviewing an agency's construction of the statute which it administers, must first determine whether Congress has directly addressed the question at issue. If the statute is silent or ambiguous, the court is not free to impose its own construction, but rather is confined to deciding whether the agency's interpretation is based on a permissible construction. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

The defendants argue that the statutory language clearly imposed a time frame for the cooperation exemption limited to pregnancy and 60 days postpartum. If Congress had intended to bar states from ever requiring women to cooperate in establishing paternity and obtaining support to reimbursement of pregnancy-related medical care, it would have enacted a statute stating that women did not have to cooperate in the reimbursement of pregnancy-related expenses. Instead, the statute limits the exemption to women during pregnancy and for 60 days after childbirth.

The defendants rely on *Douglas v. Babcock*, 990 F.2d 875 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993), the only decision to interpret the application of § 1396k. The Sixth Circuit summarized the recouping provisions and found that:

> in order to be eligible for medical assistance, a Medicaid applicant is required to assist the state by assigning *any* support and medical payment rights to the state, cooperating with the state in establishing the paternity of any minor child born out of wedlock for whom the applicant is legally responsible, and cooperating with the state in identifying and pursuing any third parties who may be liable to pay for medical care.

*Id.* at 878 (emphasis added). The court further determined that only women described in § 1396a(*l*)(1)(A) and those who have good cause to refuse are exempt from the cooperation requirement. Defendants contend that the *Douglas* holding precludes Perry and other women from refusing cooperation because, after 60 days postpartum, they are no longer described by § 1396a(*l*)(1)(A).

The plaintiff counters that *Douglas* does not apply to her case. Section 1396a(a)(10)(A)(i) lists several different categories of individuals who are eligible for Medicaid during pregnancy. The *Douglas* court determined that because the plaintiff in its case was financially eligible for Medicaid under category III of § 1396a(a)(10)(A)(i)[2], she was precluded from the exemption granted to individuals described in category IV. Ms. Perry, however, was only eligible for the more limited, pregnancy-related medical coverage defined by category IV of the subsection.[3] It is precisely this category of recipients for which Congress enacted the cooperation exemption. Plaintiff here claims that, contrary to the defendants' assertion, *Douglas* did not address the legality of pursuing

---

**2.** Category III includes "qualified pregnant women or children as defined in section 1396d(n) of this [Medicaid] title[.]" 42 U.S.C. § 1396a(a)(10)(A)(i)(III) (1992). Section 1396d(n) defines qualified pregnant women as those who "would be eligible for aid to families with dependent children" or who would "otherwise meet[] the income and resources requirements of a State plan...." 42 U.S.C. § 1396d(n)(1)(A) & (C) (1992).

**3.** Category IV includes "all individuals who are described in subparagraph (A) or (B) of subsection (*l*)(1) of this section and whose family income does not exceed the minimum income level the State is required to establish under subsection (*l*)(2)(A) ...." 42 U.S.C. § 1396a(a)(10)(A)(i)(IV) (1992). Individuals described in § 1396a(*l*)(1) are "(A) women during pregnancy (and during the 60–day period beginning on the last day of the pregnancy), [and] (B) infants under one year of age, ... who are not described in any of subclauses (I) through (III) of subsection (a)(10)(A)(i) of this section and whose family income does not exceed the income level established by the State...." (1992). In New York State, the income level is 185 percent of the income official poverty line.

support collection efforts from category IV recipients after the birth of the child.

The defendants next argue that even if the court finds the import of § 1396k(a)(1) less than clear regarding this issue, DSS's interpretation is permissible and should not be overturned. The defendants point out that the time limit during which the recipients can refuse to cooperate is clearly spelled out and that the statute places no limit on the amount or type of payments which can be sought from the father once paternity is established. The Secretary of Health and Human Services, the federal agency which must approve the state Medicaid plans, approved DSS's reimbursement policy and Mr. Hickman's affidavit supports the defendants' interpretation of the statute as permissible. *See* Item 44.

For all its detail, the statute is silent regarding recoupment of monies paid for prenatal care if the recipient reapplies for Medicaid after the postpartum period. Nor does the Congressional report cited by the plaintiff reveal legislative intent concerning this particular issue. The House Report states:

> The Committee is concerned that application of these (cooperation) requirements to women who are applying only for pregnancy-related coverage may discourage many of them from seeking benefits that would give them access to early prenatal care. The Committee notes that the Department's own manuals acknowledge that paternity determinations, which are based on one of several blood tests, cannot be made before an infant is at least 4 months old....

> Thus, the cooperation requirement is not only a potential barrier to prenatal care for the high-risk, low-income women that would most benefit from it, but is also a bureaucratic hurdle that yields absolutely no useful information until months after the prenatal period has ended.

H.Rep. No. 101–881 at 106–07 (1990). 1990 U.S.Code Cong. & Admin.News at 2118–19. While the report discussed the cooperation requirement as a barrier which discourages women from seeking benefits, it makes no mention of reimbursement of funds at a later date.

On the other hand, in enacting a series of amendments to the Medicare Act which broadened Medicaid eligibility for prenatal care between 1981 and 1990, Congress clearly demonstrated its concern over the inability of poor, pregnant women to obtain adequate health care. The 1990 amendment addressed the needs of a class of women whose income level placed them in the widening gap of Americans who were not entitled to Medicaid through welfare or some other federal program but could not afford health insurance or the costs of medical care. In granting an exemption for these category IV women, Congress specifically recognized that the support cooperation requirement would prevent many of them from applying for medical benefits. The decision to forego any revenues generated by recoupment was made in the face of ample evidence that adequate prenatal care proves cost-effective.

The legislative history of Medicaid funding for prenatal benefits, viewed in this light, supports the plaintiff's construction of Congress's intent behind the exemption as a grant rather than a postponement. Indeed, the United States Court of Appeals for the Second Circuit found the same overriding intent to extend prenatal medical coverage so clearly expressed that it struck seemingly contradictory statutory language in another provision of the Medicare Act. In *Lewis v. Grinker*, 965 F.2d 1206 (2d Cir.1992), plaintiffs, pregnant women who were illegal aliens, sought injunctive and declaratory relief of Medicaid benefits. DSS had denied them coverage based on the Omnibus Budget Reconciliation Act of 1986, Pub.L. 99–509, which amended the Medicare Act to provide medical care for indigent illegal aliens only for emergency treatment, including emergency labor and delivery, but not prenatal care. Section 1396b(v). The *Lewis* court reviewed the legislative history of the amendment's passage and found that:

> Congress has over the years unequivocally expressed its desire to continue to expand access to prenatal care.... Thus, we can discern a clearly expressed Congressional intent contrary to the plain language of the statute.... [R]efusing to extend a broad statutory prohibition to a situation Con-

gress did not foresee is necessary in order to avoid impeding a clearly expressed Congressional purpose.

*Id.* at 1219.

Unlike *Lewis,* neither the wording of the statute nor the legislative reports plainly expresses Congress's intent on the precise issue here. Nevertheless, the *Lewis* holding is pertinent in two respects. First, the legislative history relied on by the court portraying Congress's desire to provide greater access to prenatal care in its Medicaid legislation applies with equal force to Congress's enactment of the cooperation exemption in 1990. Second, the *Lewis* court justified its decision to look beyond the language of the statute based on the nature of the Medicaid Act. The court stated that:

> [T]he Medicaid Act is a statute of "unparalleled complexity," among the "most intricate ever drafted by Congress." Its provisions are " 'almost unintelligible to the uninitiated. . . .' "

> Within this contorted scheme, few areas are more complex than the coverage of prenatal care.

*Id.* at 1216 (citations omitted). The court then gave some examples of mistakes, redundancies, and inconsistencies among the amendments to the Act to demonstrate that a literal reading of a particular amendment may not suffice to interpret the meaning of the statute accurately, a view echoed by Chief Judge Merritt in his dissent in *Douglas v. Babcock,* 990 F.2d at 883. Judge Merritt stated that:

> Unfortunately, Congress has not written its Medicaid prenatal care statute concerning a pregnant woman's duty to identify the father as clearly as it has written its legislative history. The evidence of legislative intent is clear and unmistakable; the statute itself is at best opaque, at worst incomprehensible. The legislative history of the 1990 Amendment clearly states that the statute changes the law in order to allow pregnant women in poverty to be eligible for prenatal medical care even though they cannot . . . or will not identify the father. . . .

> The [House] Report then makes it abundantly clear that it is changing the old rule which denies eligibility for non-cooperating pregnant women. . . .

> Without this statement of purpose in the legislative history, an accurate analysis of the statute is almost impossible, for the convoluted statutory language is a puzzling jumble of words, exceptions, exceptions to exceptions, and exceptions to exceptions to exceptions, requiring . . . "an eye-glazing examination of a labyrinthine maze of sections, and seemingly infinite subsections, of the Medicaid Act." Certainly the "plain-meaning" rule has no application here.

990 F.2d at 883–84 (quoting the majority opinion and noting his concurrence with *Lewis* ).

It is clear that both the *Lewis* court and Chief Judge Merritt felt obliged to rely to a greater degree then usual on the legislative history of the Medicaid statute because of the difficulties inherent in discerning Congress's meaning from the statutory language itself. Nonetheless, the defendants insist that the court "must defer to the agency's resolution of the matter if it is based on a permissible construction of the statute and is 'sufficiently reasonable.' " *Detsel by Detsel v. Sullivan,* 895 F.2d 58, 62 (2d Cir.1990) (citing *Chevron,* 467 U.S. at 844–45, 104 S.Ct. at 2782–83). "Generally, the weight given to an agency's decisions 'depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " *Id.* at 65, citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

At oral argument, counsel for the defendants correctly pointed out that Congress demonstrated *two* warring intents in enacting an extension of Medicaid benefits for prenatal care. While acknowledging Congress's desire to widen access to prenatal care by removing barriers to application, the defendants properly insist that the equally important intent to make Medicaid a "payor of last resort" runs throughout the legislative record. *See, e.g.* Sen.Rep. No. 146, 99th Cong., 1986 U.S.Cong. & Admin.News, at

279. The defendants argue that their policy takes into account the "trade-off" envisioned by Congress in raising the eligibility level for prenatal medical benefits by requiring postpartum cooperation only from those women who attempt recertification for conventional Medicaid. If a woman refuses to cooperate at that point, she is denied any further Medicaid for herself even if she is otherwise eligible. However, her prenatal benefits are not taken away retroactively, and her child can continue to receive Medicaid.

Under the *Chevron* test, the question before the court must be whether the agency, in fashioning the policy and practice at issue, considered these somewhat contradictory statutory intents in a "sufficiently reasonable" manner. The court is mindful that deference to the agency's interpretation is warranted except in the " 'rare and exceptional circumstance' where the particular application of the Medicaid Act[ ] ... urged by the [agency] would fly in the face of legislative history and would create affirmative harms that Congress ... has continually sought to alleviate." *Lewis*, 965 F.2d at 1223 (citations omitted). However, "where we confront a statute that evinces a legislative purpose clearly at odds with the proffered administrative interpretation, we should not defer. Indeed, our constitutional duty to interpret the law requires us to effectuate the legislative intent notwithstanding the contrary administrative view." *New York City Health and Hospitals Corp. v. Perales*, 954 F.2d 854, 863 (2d Cir.1992). Moreover, since there is controlling authority in this Circuit emphasizing the importance of extending prenatal medical care in the legislative history of this statute, it is incumbent upon the state agency to show that this intent is reflected in the policy it chose.

■ The court does not believe that DSS's present practice of requiring a woman who has received prenatal medical benefits pursuant to § 1396a(*l*)(1) of the Medicaid Act to cooperate in recouping such payments from the father of her child if she recertifies for Medicaid after the child's birth is a "sufficiently reasonable" interpretation of the statute in light of the statutory language, its legislative history emphasizing the need to remove impediments to care, and the controlling authority of *Lewis*. Although the court must give deference to an agency's policy, DSS's interpretation is too one-sided to be a reasonable accommodation of the two intents of these subsections of the statute.

The court is persuaded by the plaintiffs evidence that the defendants' recoupment policy serves as a barrier to receipt of prenatal medical care for poor women in contradiction to the clear intent of Congress. While the policy allows a pregnant woman to postpone cooperation in the assignment of rights until after the birth of her baby, the defendants have made no showing that such postponement acts to counter the disincentive created by the cooperation requirement which Congress sought to remove. By contrast, the plaintiff has made a strong showing that poor women who would otherwise be eligible for Medicaid coverage of prenatal medical care are deterred from seeking benefits by the present policy. Plaintiff argues that women in her position who are notified [4] that their household will be subject to reimbursement proceedings may well choose to forego participation in the program. In support of her argument, the plaintiff has provided affidavits from health care professionals who are involved in assisting women to receive financial help for prenatal care. The affidavits affirm that the recoupment policy prevents some women from seeking needed Medicaid-sponsored prenatal care to which they would be entitled.

Although not discussed in depth at oral argument, the court must also query whether the reimbursement policy is even cost-effective. Given the relatively low cost of prenatal care in most instances and the likelihood that many of the fathers will not be able to

---

**4.** In her second cause of action, plaintiff alleges that the defendants violated her Fourteenth Amendment right to due process by failing to inform her that if she refused to cooperate, the defendants would still be required to provide continued Medicaid benefits to her son. Since I find the defendants' policy and practice of conditioning recertification of Medicaid benefits on cooperation an impermissible interpretation of the Medicaid Act, I need not reach the due process issue.

repay these expenses in addition to reimbursing the state for funds expended to provide mother and child with conventional Medicaid after recertification, it is difficult to imagine that enforcement of the cooperation requirement after the child's birth could yield savings substantial enough to warrant the perpetuation of the barrier which prevents women from applying for medical care during pregnancy. The defendants have not provided the court with any evidence that their policy results in significant savings. Neither have they shown that they considered the negative impact of the policy and attempted to minimize its deterrent effect.

Accordingly, the court finds that the defendants have failed to provide a sufficiently reasonable explanation of their interpretation of the Medicaid Act as it affects the exemption to the cooperation requirement for women who receive coverage for prenatal medical care. Although they state that their policy is permitted by the statutory language, they have not shown they attempted to balance the two conflicting intentions manifest in this aspect of the Medicaid Act with the thoroughness of consideration and validity of reasoning required by this Circuit to entitle them to judicial deference of their interpretation.

## II. Class Certification

█ Plaintiff moves to certify a class comprising all applicants and recipients throughout New York State who have been, are, or will be found eligible for Medicaid coverage of their pregnancy-related medical expenses under 42 U.S.C. § 1396a($l$), N.Y. Social Services Law § 366(4)($o$), and N.Y. Public Health Law § 2520 et seq. Plaintiff asserts that the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied by this class definition. The class, which includes thousands of women, is so numerous that joinder of all members is impracticable. There are common questions of law and fact. The suit involves the state agency's interpretation of a federal statute and the adequacy of the notice given to applicants of this interpretation. The typicality requirement is met because the named plaintiffs claims arise from the same conduct that

gives rise to the class's claims. Finally, Perry's interests are identical to those of the class. She seeks to require defendants to implement the exemption from cooperation under § 1396a($l$) and to provide adequate notice. Counsel for the proposed plaintiff class, supported by the Greater Upstate Law Project, assure the court of their expertise in Medicaid law and child support issues and their extensive experience litigating class actions in federal court.

Defendants do not challenge the numerosity prerequisite but maintain that the proposed class is too indefinite to show either typicality or commonality of fact between plaintiff's individual situation and those of other class members. They claim there is also no common issue of law since the statutes in question already require the defendants to seek cooperation in establishing paternity and obtaining support as well as providing adequate notice. Defendants further argue that plaintiff does not fairly or adequately protect the interests of the proposed class. Defendants contend that the intent behind § 1396k and its relevant regulations is the maintenance of a fiscally sound public program which would benefit the class as a whole by providing more resources for those in need.

Defendants' central argument, however, is that class certification is not appropriate where the declaratory and injunctive relief, if granted, would inure to the benefit of the proposed class members even absent certification. *Galvan v. Levine*, 490 F.2d 1255 (2d Cir.1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). A determination by this court that the defendants' policies and practices constitute a violation of federal law would necessarily provide relief to the class even without certification. Government officials are entitled to a presumption that they will abide by a court order. *McKenna v. Peekskill Housing Authority*, 83 F.R.D. 600 (S.D.N.Y.1979). The two Legal Services agencies representing the plaintiff can be relied upon to maintain an ongoing interest in monitoring enforcement.

Since the plaintiff is seeking only injunctive and declaratory relief and the court can presume the defendants will apply any relief

granted to all those affected by the relevant regulations, there does not appear to be a need to certify a class. However, a stipulation that the agency would enforce an order by this court state-wide, including proper notice and remedy to class members who may benefit, might be necessary to insure that the relief will be granted in its entirety.

## CONCLUSION

Plaintiff Jodi Perry's motion for summary judgment is granted. Her motion for class certification is denied.

So ordered.