95 F.3d 231
 51 Soc.Sec.Rep.Ser. 688, Medicare & Medicaid Guide
P 44,639
Jodi PERRY, Individually and on behalf of all others
similarly situated, Plaintiff-Appellee,
v.
Michael DOWLING, Individually and in his official capacity
as Commissioner of the New York State Department of Social
Services; and Joan Sinclair, as Commissioner of the
Allegany County Department of Social Services, Defendants-Appellants.
 Nos. 1535, 1659, Dockets 95-9084(L), 95-9132(CON).
 United States Court of Appeals,
Second Circuit.
 Argued April 8, 1996.
Decided Sept. 10, 1996.
 
 Mark H. Wattenberg, Southern Tier Legal Services, Bath, NY (Amy Christensen, Southern Tier Legal Services, David Pels, Watkins Glen, NY, June Castellano and Ellen Yacknin, Greater Upstate Law Project, Inc., Rochester, NY, on the brief), for plaintiff-appellee.
 Michael Belohlavek, Assistant Attorney General of the State of New York (Dennis C. Vacco, Attorney General, Peter H. Schiff, Deputy Solicitor General, Wayne L. Benjamin and John McConnell, Assistant Attorneys General, on the brief), for defendants-appellants.
 Before KEARSE and ALTIMARI, Circuit Judges, and JOHNSON, District Judge.*
 ALTIMARI, Circuit Judge.
 
 
 1
 The defendants-appellants, the Commissioner of the New York State Department of Social Services ("DSS") and the Commissioner of the Allegany County Department of Social Services ("ACDSS"), appeal from a judgment of the United States District Court for the Western District of New York (Curtin, J.), granting the plaintiff-appellee's motion for summary judgment. The district court concluded that DSS's policy requiring women who received prenatal and postpartum medical assistance under section 1902(a)(10)(A)(i)(IV) of the Social Security Act ("Act"), 42 U.S.C. § 1396a(a)(10)(A)(i)(IV) (1994), to cooperate in efforts at retroactively recouping the costs of such medical assistance from the unwed fathers of their children upon recertification for continued Medicaid coverage, is an unreasonable interpretation of the exemption from paternity cooperation extended to poverty level pregnant women under section 1912(a)(1)(B) of the Act, 42 U.S.C. § 1396k(a)(1)(B). See Perry v. Dowling, 888 F.Supp. 485, 492-93 (W.D.N.Y.1995). We hold that DSS's policy is a permissible interpretation of the statute, and, therefore, reverse.
 
 BACKGROUND
 1. Statutory and Regulatory Framework
 
 2
 The present case concerns the provisions of the Social Security Act extending Medicaid coverage to indigent pregnant women. We have elsewhere described the general nature of the Act's Medicaid provisions, see New York Dep't of Social Servs. v. Shalala, 21 F.3d 485, 487 (2d Cir.1994); Lewis v. Grinker, 965 F.2d 1206, 1208-09 (2d Cir.1992), as well as the historical development of prenatal services for indigent, pregnant women, see id. at 1209-11, and, consequently, limit our discussion of the regulatory framework to the particular statutory provisions and regulations at issue.
 
 
 3
 Under Medicaid's "Medical Assistance" provisions, state Medicaid plans must offer a range of prenatal, delivery, and postpartum benefits to pregnant women who do not otherwise qualify for Medicaid, but whose income falls within (i) 133% of the federal poverty income level, or (ii) at the state's option, 185% of the federal poverty income level. See 42 U.S.C. § 1396a(a)(10)(A)(i)(IV). Eligible women meeting the above income requirements must be "women during pregnancy (and during the 60-day period beginning on the last day of the pregnancy)." 42 U.S.C. § 1396a(l )(1)(A) (incorporated by reference into section 1396a(a)(10)(A)(i)(IV)). The Health Care Financing Administration ("HCFA"), the division of the United States Department of Health and Human Services ("HHS") charged with overseeing Medicaid, refers to such women as "poverty level pregnant women". See 58 Fed.Reg. 4904, 4905 (1993). New York State has exercised its option under the statute to provide such prenatal and postpartum medical assistance to women whose incomes fall within 185% of the federal poverty income level. See New York Social Services Law § 366.4(o) (McKinney 1992).
 
 
 4
 In order to help defray the costs incurred by the state, section 1396k(a)(1) requires that as a condition of eligibility for general Medicaid assistance a state Medicaid plan must require individuals applying or receiving such assistance to do three things: (1) assign to the state any rights they have, on behalf of themselves or their child, to support, and payment for medical care from any third party (the "assignment provision"), (2) cooperate with the state in (i) establishing the paternity of their child, if it is born out of wedlock, and (ii) obtaining support and payments for themselves and/or their child (the "paternity cooperation provision"), and (3) cooperate with the state in identifying and pursuing any third party, such as an insurer, who may be liable for care and services available under the statute (the "third party cooperation provision"). See 42 U.S.C. § 1396k(a)(1)(A)-(C); 42 C.F.R. §§ 433.145-147 (1994).
 
 
 5
 Only under two circumstances will an applicant not be required to comply with the cooperation provisions above. The first exception provides that individuals having "good cause"--as determined by the state agency implementing Medicaid--need not comply with the requirements of the paternity or third party cooperation provisions. See 42 U.S.C. § 1396k(a)(1)(B) and (C). The second exception provides that individuals described by section 1396a(l )(1)(A), namely "women during pregnancy (and during the 60-day period beginning on the last day of the pregnancy)," need not comply with the requirements of the paternity cooperation provision. See 42 U.S.C. § 1396k(a)(1)(B); 42 C.F.R. §§ 433.145(a)(2), .147(a)(1). The present controversy concerns the breadth of this second exception.
 
 2. The Present Action
 A. Underlying Events
 
 6
 In October 1991, plaintiff-appellee Jodi Perry ("Perry") became pregnant. At the time, she was unmarried and living with the father of the child, Thomas A. English II ("English"). Because of her modest income, Perry did not qualify for full Medicaid benefits. She did, however, qualify for pregnancy-related medical assistance under the Act as a poverty level pregnant woman, and on February 5, 1992 ACDSS approved such medical coverage. In accordance with the requirements of the assignment provision of section 1396k(a)(1)(A), Perry's application for medical assistance included a clause assigning to the state her rights to any support and payment for the medical assistance from any other person.
 
 
 7
 Perry's son was born on July 29, 1992. On October 20, 1992, Perry applied for continued medical coverage of her son, and recertified for conventional Medicaid coverage of herself, since she no longer qualified for medical assistance as a poverty level pregnant woman. Like her original application for medical assistance, her recertification application contained an assignment to the state of her rights to support and payment. Two days later ACDSS approved continued coverage for her son and Medicaid coverage for Perry.
 
 
 8
 At the time of her recertification application, Perry was also asked to complete and execute an "Application for Child Support Services". Printed on the application was an affirmation which stated, in relevant part: "I hereby apply pursuant to Social Services Law § 111-g and 111-h for child support services under Title IV-D of the Social Security Act as amended. I ... affirm ... that this application is made for the sole purpose(s) of obtaining assistance in establishing paternity and/or obtaining child support...." The application's contents are dictated by the child and spousal support enforcement scheme established by Title IV-D of the Act, 42 U.S.C. §§ 651-669, whereby state Medicaid plans must provide for paternity determination, absent-parent location, and child support enforcement and collection procedures with respect to, inter alia, assignments made under section 1396k--namely, assignments of medical support and payment rights owed to recipients of medical assistance. See 42 U.S.C. § 654(4); N.Y. Soc. Serv. Law §§ 111-a through 111-l (McKinney 1992 & 1996 Supp.). The application is also in compliance with the paternity cooperation requirements delineated in section 1396k(a)(1)(B), from which Perry was not exempt with regard to recertifying for continued medical coverage of herself under Medicaid.
 
 
 9
 Relying on Perry's assignments of her medical support rights from English, and her application for child support services, ACDSS commenced child support proceedings against English. On March 5, 1993 it filed a modified petition seeking reimbursement from English of $4,656.72 in medical assistance costs provided to Perry and her son during Perry's pregnancy and postpartum period. Perry and English were then summoned to appear before the Allegany County Family Court on May 14, 1993, in connection with the petition.
 
 B. Proceedings before the District Court
 
 10
 Perry commenced the instant suit in June 1993 as a class action on behalf of herself and all others similarly situated. The complaint essentially claimed that the defendants violated the class's rights: (1) under section 1396k(a)(1)(B) by requiring their cooperation in establishing paternity and obtaining support payments for the reimbursement of medical assistance provided to them during their pregnancy and postpartum period, and (2) under the due process clause of the Fourteenth Amendment to the United States Constitution by failing to advise them of their paternity cooperation obligations at the time they (i) apply and qualify for medical assistance as poverty level pregnant women, and (ii) apply or recertify for medical coverage. The class action complaint sought certification of the class, and declaratory and injunctive relief prohibiting the alleged violations.
 
 
 11
 Perry then moved for summary judgment on the complaint, and the defendants cross-moved for summary judgment dismissing the complaint. As explained in more detail below, the district court concluded that the defendants' policy requiring poverty level pregnant women who received medical assistance under section 1396a(a)(10)(A)(i)(IV) to cooperate in recouping the cost of the medical assistance from the father of the child upon recertification for continued Medicaid coverage of themselves was an unreasonable interpretation of the statute. See Perry, 888 F.Supp. at 492. Accordingly, the district court declined to defer to DSS's interpretation of the scope of section 1396k(a)(1)(B)'s exemption, and granted the plaintiffs' motion. The court further held that it was not necessary to reach the plaintiffs' due process claims. See id., at 492 n. 4. Finally, it concluded that class certification was not necessary, because the change in the agency's policy resulting from the injunctive and declaratory relief granted to Perry would apply to the class members as well. See id. at 493-94.
 
 
 12
 The defendants appeal the district court's decision.
 
 DISCUSSION
 
 13
 We review a district court's grant of summary judgment de novo. Giano v. Senkowski, 54 F.3d 1050, 1052 (2d Cir.1995). Specifically, because the district court's disposition "presents only a legal issue of statutory interpretation ....[w]e review de novo whether the district court correctly interpreted the statute." White v. Shalala, 7 F.3d 296, 299 (2d Cir.1993).
 
 
 14
 Initially, we note that the issue presented in this case does not concern the meaning of the paternity cooperation exemption in section 1396k(a)(1)(B). The language of the exemption is quite clear; it applies to "individual[s] ... described in section 1396a(l )(1)(A) of this title;" namely, "women during pregnancy (and during the 60-day period beginning on the last day of the pregnancy)." Rather, the issue in this case concerns the scope of the exemption. Specifically, it concerns whether or not the exemption covers cooperation in the state's efforts to retroactively recoup the costs of prenatal and postpartum medical assistance provided to the mother and infant, upon recertification for continued medical coverage of the mother beyond the statutory 60-day postpartum period.
 
 
 15
 The statute is silent as to whether the scope of the exemption extends to cover cooperation in the retroactive recoupment of pregnancy-related medical assistance provided to the mother and infant, and Congress has not directly addressed the issue in the Act. Accordingly, substantial deference to the pertinent agency's interpretation of the statute is warranted, so long as its interpretation is based on a permissible construction of the statute:
 
 
 16
 [where] the court determines [that] Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 17
 Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted). Such deference is particularly warranted with respect to interpretations of the Social Security Act, because of the Act's intricate nature. See Connecticut Hosp. Ass'n v. Weicker, 46 F.3d 211, 219 (2d Cir.1995) (Deference to an agency "is 'even more appropriate where ... we consider a small corner of a labyrinthine statute.' ") (quoting Skandalis v. Rowe, 14 F.3d 173, 178 (2d Cir.1994)); White, 7 F.3d at 300 (noting a "special need" to defer to HHS's interpretation of the Act) (citing Schweiker v. Gray Panthers, 453 U.S. 34, 43, 101 S.Ct. 2633, 2639-40, 69 L.Ed.2d 460 (1981)).
 
 
 18
 In determining whether an agency's construction is permissible, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted ... or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Chevron, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11. Rather, a permissible construction of the statute is one that "reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' expressed intent." Rust v. Sullivan, 500 U.S. 173, 184, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991); see also Meriden Trust and Safe Deposit Co. v. Federal Deposit Ins. Corp., 62 F.3d 449, 453 (2d Cir.1995) (An agency's interpretation of a statute will be reversed "if it appears from the statute or its legislative history that the [agency's] interpretation is contrary to Congress's intent.") (internal quotations and citation omitted); White, 7 F.3d at 300-03 (reviewing reasonableness of agency's interpretation by analyzing statute's language and legislative intent). Finally, the court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by [an] agency." Chevron, 467 U.S. at 844, 104 S.Ct. at 2782.
 
 
 19
 These principles are generally applicable to interpretations of federal statutes by federal agencies. When the federal-statute interpretation is that of a state agency and "no federal agency is involved," deference is not appropriate. See Turner v. Perales, 869 F.2d 140, 141 (2d Cir.1989) (per curiam). Turner does not control the present case, however, for two reasons. First, as we have previously explained, Medicaid is a joint federal-state program that requires, among other things, HHS approval of state Medicaid plans and their implementation, see Grinker, 965 F.2d at 1208. Thus, here, unlike in Turner, a federal agency is involved. Second, the statutory scheme contemplates that once approved by HHS, implementation and operation of Medicaid programs will be conducted by the states; and although in this case the initial interpretation of the paternity cooperation exemption was that of DSS, a state agency, HHS has expressly agreed with DSS's interpretation. DSS interprets § 1396k(a)(1)(B) as mandating it to require women who received medical assistance when pregnant and who, more than 60 days after the end of the pregnancy, seek recertification for continued Medicaid coverage, to cooperate in recouping the cost of the medical assistance from the father of the child. The Director of HCFA's Office of Medicaid Policy, which is the HHS division responsible for interpreting the Medicaid requirements with which a state must comply in order to receive federal funding, submitted a declaration stating that HCFA concurs in DSS's interpretation of what the federal statute permits. Noting that, upon recertification for medical assistance, "once cooperation has been properly obtained and paternity has been established, federal law does not place a limit on the amount of recovery from the father," the HCFA declaration states expressly that the requirements imposed by DSS are "correct" and are "no violation ... of 42 U.S.C. § 1396k(a)(1)." In these circumstances, in which the state has received prior federal-agency approval to implement its plan, the federal agency expressly concurs in the state's interpretation of the statute, and the interpretation is a permissible construction of the statute, that interpretation warrants deference. Cf. Chevron, 467 U.S. at 844-45 & n. 14, 104 S.Ct. at 2782-83 & n. 14 (considerable weight should be accorded to an executive department's construction of a statutory scheme when more than ordinary knowledge respecting the matters subjected to its regulation is required to understand a given situation); Friends of Shawangunks, Inc. v. Clark, 754 F.2d 446, 449 (2d Cir.1985) (considerable deference is afforded to any reasonable interpretation of a statute by the agency charged with administering it, "especially where specialized agency understanding is involved.").
 
 
 20
 The district court concluded that DSS's interpretation of the exemption was unreasonable and, therefore, not entitled to deference, because it was contrary to the underlying congressional intent of extending prenatal medical care to poorer women. According to the court, the exemption's legislative history emphasized the need to remove impediments to prenatal care, and this intent was underscored by our decision in Grinker (holding that indigent pregnant women who are illegal aliens are entitled to prenatal care under the Act), where we explained Congress's "unequivocally expressed ... desire to continue to expand access to prenatal care." Id., 965 F.2d at 1219. Despite Congress's intent in expanding access to prenatal care, our review of the statutory scheme leads us to conclude that DSS's interpretation was a reasonable one.
 
 
 21
 Although the district court was correct to surmise that "the statute is silent regarding recoupment of monies paid for prenatal care if the recipient reapplies for Medicaid after the postpartum period," Perry, 888 F.Supp. at 490, reading the exemption in the context of its preceding statutory section supports the reasonableness of DSS's interpretation. See United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am. Inc., 508 U.S. 439, 455, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) ("Statutory construction 'is a holistic endeavor,' and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter.") (citation omitted); Aircraft Mechanics Fraternal Ass'n v. Atlantic Coast Airlines, Inc., 55 F.3d 90, 94 (2d Cir.1995) ("An individual section of a statute should not be interpreted in isolation but as part of the entire statutory scheme.").
 
 
 22
 Pursuant to section 1396k(a)(1)(A), when a poverty level pregnant woman initially applies for medical assistance she must assign to the state any rights to medical support from the unwed father. See 58 Fed.Reg. at 4905. As the assignee, the state then holds the right to such support, and is only prevented from enforcing its right at the time of the assignment if the mother exercises her right not to cooperate by refusing to execute a petition for support enforcement services. See id. (exempt individuals can still obtain child support enforcement services) and id. at 4907 (noting that exempt individuals "may, in fact, voluntarily cooperate in establishing paternity"). However, because the assignment itself is not restricted in any manner by the statute or its own terms, the state is not limited to enforcing its right to support payments only during the time period of the applicant's pregnancy or postpartum period. Rather, it retains the ability as a creditor of the unwed father to recoup such payments at a later time.
 
 
 23
 The plaintiff's construction of the exemption, on the other hand,--namely, that the exemption precludes retroactive recoupment of the costs of pregnancy-related care upon recertification for Medicaid coverage of the mother--effectively renders the assignment under section 1396k(a)(1)(A) meaningless, because it makes the assignment's enforcement contingent upon the woman's cooperation during her pregnancy, which is counter to the express language of the exemption. Such a limitation significantly diminishes the force of the statute's assignment provisions, undermines the purpose of the assignment, and finds no support from the language of the statute or its legislative history. Because statutes must be interpreted to give meaning to all of their terms, see United States v. LaPorta, 46 F.3d 152, 156 (2d Cir.1994) ("[A]ll parts of a statute, if possible, are to be given effect.") (internal quotations and citations omitted); United States v. Bernier, 954 F.2d 818, 819 (2d Cir.1992) (per curiam) ("[C]ourts must give effect to every word of a statute where possible."), cert. denied, 508 U.S. 941, 113 S.Ct. 2417, 124 L.Ed.2d 640 (1993), we decline to adopt the plaintiff's interpretation of the statute. In contrast, the agency's interpretation gives meaning to the statute's assignment provision. Moreover, its interpretation comports with the plain language of the exemption in section 1396k(a)(1)(B), which only concerns itself with the time period during which cooperation in establishing paternity and obtaining the support payments assigned under section 1396k(a)(1)(A) is exempted as a precondition to eligibility, namely, "during pregnancy ... and during the 60-day period beginning on the last day of the pregnancy," and not the time period during which support payments may or may not be recouped.
 
 
 24
 Neither is the agency's interpretation contrary to the legislative intent underlying the exemption. Congress explained that its intent in exempting poverty level pregnant women from the paternity cooperation provisions was the result of: (1) its conclusion that it was senseless to require cooperation during pregnancy given that paternity could not be established until the infant was approximately four months old, and (2) Congress's desire to encourage pregnant women to receive early prenatal care. See H.R.Rep. No. 881, 101st Cong., 2d Sess. 106-07 (1990), reprinted in 1990 U.S.C.C.A.N.2017, 2118-19; 58 Fed.Reg. at 4905. The plaintiff argues that because English, the unwed father, lived with her at the time of her recertification and was contributing to the household income, requiring him to repay the cost of the prenatal services provided would diminish the household income, thereby creating a disincentive from applying for prenatal medical assistance in contravention of Congress's intent. We find the argument spurious.
 
 
 25
 Congress clearly did not intend to encourage parents to live out of wedlock in the same home with their children in such a manner that they could receive carte blanche public assistance. Indeed, the plaintiff's construction undermines another fundamental purpose underlying section 1396k: Congress's intent that unwed fathers be held accountable for the costs of services provided to the mother during pregnancy and thereafter. Unlike the construction urged by the plaintiff, the agency's interpretation gives effect to this purpose without directly conflicting with the underlying purpose of the cooperation exemption. Under DSS's interpretation, poverty level pregnant women remain entitled to prenatal care with no strings attached. It is only upon recertification for continued Medicaid coverage that the recoupment procedures against the unwed father are triggered. Thus, while DSS's policy may discourage recertification (an effect that the paternity cooperation requirements undoubtedly have anyway, as recognized by the passing of the pregnancy exemption), the policy is unlikely to discourage prenatal care. Where, as here, an agency's interpretation reasonably accommodates and reconciles competing interests, its interpretation is entitled to deference. See Chevron, 467 U.S. at 865, 104 S.Ct. at 2792-93.
 
 
 26
 Accordingly, in light of: (1) the language of the statute limiting the exemption to cooperation during the time period of pregnancy and 60-days after the last day of pregnancy, (2) the fact that recoupment does not undermine Congress's intent of encouraging early prenatal care, and (3) the fact that DSS's interpretation gives meaning to the entire statutory scheme, we conclude that DSS's interpretation is a reasonable and permissible construction warranting substantial deference. Consequently, we reverse and remand for consideration of the plaintiff's due process claims.
 
 CONCLUSION
 
 27
 For the reasons stated above, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Sterling Johnson, Jr., Judge, United States District Court for the Eastern District of New York, sitting by designation