**Helen CARROLL, as Surviving Spouse of Raymond Carroll, Deceased, and Harriet S. Herrick, as Surviving Spouse of John Herrick, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Barbara DEBUONO, M.D., MPH, Commissioner of Health of the State of New York, Ross Prinzo, Jr., Commissioner of the Albany County Department of Social Services, and Richard Staszak, Commissioner of the Schenectady County Department of Social Services, Defendants.**

No. 96–CV–0502.

United States District Court, N.D. New York.

March 11, 1998.

O'Connell & Aronowitz, Albany, NY (Peter Danziger, Pamela A. Nichols, Kathleen M. Treasure, of counsel), Office of Norma E. Hogan, Albany, NY (Norma E, Hogan, of counsel), for Plaintiffs.

Office of Attorney General, State of New York, Albany, NY (Robert A. Seigfried, Asst. Atty. Gen., of counsel), for Defendants Prinzo, Staszak and DeBuono.

County of Albany Department of Social Services, Albany, NY (Caroline Guresz, of counsel), for Defendant Prinzo.

Department of Social Services, General Counsel, Schenectady, NY (Francis Tedeschi, of counsel), for Defendant Staszak.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

This case challenges the validity of a New York State Department of Social Service regulation, 18 N.Y.C.R.R. 360–7.5(a)(5) (the "Regulation"), limiting a Medicaid recipient to reimbursement of medical costs incurred three months prior to their application and receipt of a medical card (the "retroactive period") to medical care provided by a Medicaid-enrolled provider.

Plaintiffs are Medicaid recipients who were denied reimbursement for medical expenses incurred during their respective retroactive periods because they did not obtain medical care from a Medicaid-enrolled provider. Plaintiffs commenced the instant action by filing a class-action complaint, seeking to declare the Regulation invalid insofar as it limits reimbursement of medical expenses incurred during the retroactive period to medical care provided by Medicaid-enrolled providers; enjoining defendants from further enforcement of the Regulation; and directing defendants to reimburse plaintiffs for medical expenses incurred by plaintiffs and the proposed class during their respective retroactive periods. Plaintiffs also assert a claim against defendants in their official capacity, pursuant to 42 U.S.C. § 1983, for allegedly violating plaintiffs' rights to equal protection and due process of law under the Fourteenth Amendment.

Presently before the Court are motions by both parties for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Both sides agree that this case may be decided on summary judgment as there are no disputed issues of material fact. Plaintiffs also move for class certification pursuant to Rule 23(c) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. Standard For Summary Judgment

The standard for summary judgment is well-settled. A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." Id. 477 U.S. at 325.

The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. See id. at 322. The test for existence of a genuine dispute is whether a reasonable juror could find for the nonmoving party; that is, whether the nonmovant's case, if proved at trial, would be

sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In ruling on a motion for summary judgment, a court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs.*, 834 F.2d 54, 57 (2d Cir.1987). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations and quotations omitted).

It is with the foregoing standards in mind that the Court turns to the issues presented.

## B. Medicaid Statutory and Regulatory Framework

Medicaid, enacted in 1965 as Title XIX of the Social Security Act, is a cooperative federal-state program providing medical assistance to indigent people. 42 U.S.C. § 1396. While state participation in the Medicaid program is purely voluntary, a state that participates must comply with the Medicaid laws and implementing regulations. *See* 42 U.S.C. § 1396; 42 U.S.C. §§ 1396a(a)(1)–1396a(a)(62); *Himes v. Shalala*, 999 F.2d 684, 686 (2d Cir.1993) (citing *New York v. Sullivan*, 894 F.2d 20, 21–22 (2d Cir.1990)); *Dental Soc. of the State v. Carey*, 61 N.Y.2d 330, 474 N.Y.S.2d 262, 264, 462 N.E.2d 362 (1984). A participating state must submit a Medicaid plan to the federal Department of Health and Human Services ("HHS") for approval. *See* 42 U.S.C. § 1396 *et seq.* Once the plan is approved, the federal government reimburses a state for a percentage of the state's payments to Medicaid providers caring for Medicaid recipients.

The State of New York has chosen to participate in the Medicaid program. Until October 1, 1996, the New York State Department of Social Services ("DSS") supervised New York's Medicaid program. Presently, the New York State Department of Health administers the State Medicaid program. As part of its duties, the Department of Health (and formerly the DSS) is authorized to "make such regulations, not inconsistent with law, as may be necessary to implement [the Medicaid program.]" N.Y. Soc. Servs. Law § 363–a(2) (McKinney's 1992).

## C. The Challenged Regulation

The present action challenges the validity of a state regulation adopted by the DSS, 18 N.Y.C.R.R. § 360–7.5(a)(5), which provides:

(a) Payment for medical care provided under the [Medicaid] program will be made to the person or institution supplying the care. However, payment for services or care may be made at the [Medicaid] rate or fee in effect at the time such services or care were provided, to the following:

(5) a recipient or his/her representative for paid medical bills for medical expenses incurred during the period beginning three months prior to the month of application for [Medicaid] and ending with the recipient's receipt of his/her [Medicaid] identification card, provided that the recipient was eligible in the month in which the medical care and services were received *and that the medical care and services were furnished by a provider enrolled in the Medicaid program* (emphasis added).

18 N.Y.C.R.R. § 360–7.5(a)(5)

According to plaintiffs, the Regulation, insofar as it restricts reimbursement for medical expenses incurred during the retroactive period to care provided by a Medicaid-enrolled provider, is invalid because it violates federal Medicaid laws and regulations. Plaintiffs further assert that the Regulation, by limiting reimbursement to recipients receiving care from a Medicaid-enrolled provider, imposes an unreasonable classification in

violation of the Equal Protection Clause of the Fourteenth Amendment. Lastly, plaintiffs contend that defendants failed to provide plaintiffs with notice of their right to reimbursement of medical expenses incurred during the retroactive period, in violation of federal and state statutes and plaintiffs' rights to due process under the Constitution. Defendants, in turn, assert that the Regulation is entirely consistent with and implements the express conditions set forth in the federal Medicaid laws.

### i) Standard of Review

■ Both sides posit that the standard of review the Court should apply in examining the Regulation is whether it is arbitrary, capricious or manifestly contrary to federal Medicaid law. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (*"Chevron"*). While the Court agrees that the *Chevron* standard governs, further comment is required.

The Supreme Court, in *Chevron,* articulated a two-step analysis in determining whether an agency interpretation complies with federal law. First, "a court must ... determine whether the plain language of the statute speaks directly to the issue. If Congress has directly addressed the matter, the court as well as the agency must give effect to congressional intent. [Second], [i]f ... Congress has not directly addressed the matter at issue, then the court must determine whether the agency's construction of the statute was a permissible one." *Himes,* 999 F.2d at 688 (citing *Chevron,* 467 U.S. at 842–43).

*Chevron,* however, "dealt with the question of what deference should be accorded a *federal* executive agency's construction of an ambiguous federal statute." *Turner v. Perales,* 869 F.2d 140, 141 (2d Cir.1989) (citations omitted) (emphasis added). Here, by contrast, the Court reviews a regulation promulgated by a *state* agency. In instances when only a state statute or regulation is at issue, the Second Circuit counsels a less deferential standard: "whether the state law and implementing regulations are consistent with federal law. This is an issue, subject to *de novo* analysis." *Turner,* 869 F.2d at 141 (applying *de novo* review of New York State's public housing assistance policies); *see also Perry v. Dowling,* 95 F.3d 231, 235–36 (2d Cir.1996) (stating that *Chevron* approach applies to interpretations of federal statutes by federal agencies, whereas deference is not appropriate to interpretations of federal statutes by state agencies); *Amisub (PSL), Inc. v. State of Colorado Dept. of Social Servs.,* 879 F.2d 789 (10th Cir.1989) (applying less deferential *de novo* standard in determining whether state Medicaid plan complied with requirements of federal Medicaid laws), *cert. denied,* 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990); *DeLuca v. Hammons,* 927 F.Supp. 132, 133 (S.D.N.Y. 1996) (applying *de novo* review in determining whether state regulation concerning federal Medicaid program violated federal Medicaid laws and regulations).

The Second Circuit, in *Perry,* 95 F.3d at 235–236, added a final twist to this analysis. At issue in *Perry,* like here, was the DSS's interpretation of the federal Medicaid laws. In upholding the policy of the state agency as reasonable, the Second Circuit rejected application of the *Turner* standard, instead applying *Chevron* deference. The court articulated two reasons for applying *Chevron* over *Turner.* First, the court reasoned that a *federal* agency was involved because "Medicaid is a joint federal-state program that requires, among other things, HHS approval of state Medicaid plans and their implementation." *Id.* Second, the court noted that the HHS had submitted a declaration stating that it concurred with the interpretation of the DSS. Thus, although the initial interpretation of the federal Medicaid laws was made by a state agency, a federal agency had stamped its approval on the State's interpretation.

After consideration, this Court concludes that, as in *Perry,* the proper standard of review is the *Chevron* two-prong standard of substantial deference. This case, like *Perry,* challenges a state agency regulation regarding New York's Medicaid program that has been approved by a federal agency. The Court now turns to the merits.

### ii) Congressional Intent

The first step in the *Chevron* analysis is to determine whether Congress has addressed "the precise question at issue." 467 U.S. at 842. The precise question in this case, is whether Medicaid recipients must obtain care from a Medicaid-enrolled provider to obtain reimbursement for medical expenses incurred during the retroactive period.

The Court begins with a review of the relevant statutory language. *See, e.g., American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982). The governing federal retroactive eligibility statute is 42 U.S.C. § 1396a(a)(34), which provides:

> [I]n the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished.

42 U.S.C. § 1396a(a)(34) (West 1992). A review of this statute, along with the implementing regulations, reveals that the Medicaid laws are silent on the subject of whether Medicaid recipients must obtain care from an enrolled provider to be eligible for reimbursement during the retroactive period. *See id.;* 42 C.F.R. § 435.914; *Chevron*, 467 U.S. at 843 (stating that "if the statute is *silent* or ambiguous with respect to the specific issue," a court must move to step two of *Chevron*) (emphasis added). Indeed, both sides apparently have conceded that Congress has not directly addressed this issue, for both begin their analysis under *Chevron* step two.

### iii) Permissible Construction

The Court thus proceeds to *Chevron* step two: whether the New York State Regulation "is based on a permissible construction of the statute." 467 U.S. at 843. In making this determination, "the court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n. 11 "Rather, a permissible construction of the statute is one that 'reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' expressed intent.'" *Perry*, 95 F.3d at 236 (quoting *Rust v. Sullivan*, 500 U.S. 173, 184, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991)).

According to defendants, the Regulation at issue is entirely consistent with the federal Medicaid laws. To support their position, defendants cite to the language of the federal retroactive eligibility statute that extends retroactive coverage to "care and services included under the plan." *See* 42 U.S.C. § 1396a(a)(34). Defendants assert that this phrase means care and services furnished by Medicaid-enrolled providers. Defendants buttress this interpretation by citing to the Report of the Senate Finance Committee regarding the retroactive eligibility coverage of § 1396a(a)(34). That report provides, in relevant part:

> Your Committee's bill would therefore require States to provide coverage for care and services furnished in or after the third month prior to application for those individuals *who were otherwise eligible when the services were received.... States are expected to modify their provider agreements where applicable so as to permit the application of appropriate utilization control procedures retroactively in these cases to assure that the appropriate and necessary care was delivered.*

SEN. R. No. 1230, 92d Cong., 2d Sess. 209, 1972 U.S.C.C.A.N. 5370 (emphasis added). Defendants also cite to other sections of the Medicaid laws that restrict reimbursement to only enrolled providers and individuals in limited circumstances. *See* 42 U.S.C. §§ 1396a(a)(27), (32); 42 C.F.R. § 447.10.

Defendants further assert that the Regulation is in harmony with the Act's goal of preventing fraud. Specifically, defendants offer that by limiting reimbursement to ser-

vices provided by enrolled providers the State ensures that limited funding will not be advanced to previously excluded or suspended providers. Similarly, defendants posit that unscrupulous non-enrolled providers could manipulate their records without the fiscal controls applied to Medicaid-enrolled providers. *See* Affirmation of Jane McCloskey, ¶¶ 33–34.

Plaintiffs counter that Congress, in enacting § 1396a(a)(34), intended to provide individuals retroactive eligibility for medical assistance without restriction to whether a Medicaid-enrolled provider rendered the care. Plaintiffs reason that because § 1396a(a)(34) and its implementing regulation place no restriction on reimbursement other than the services themselves be "of a type covered under the plan," *see* 42 C.F.R. § 435.914, the Regulation adds a requirement not present or intended under the federal Medicaid laws.

Furthermore, plaintiffs maintain that this added requirement conflicts with the Act's goal of protecting eligible individuals prior to application. Persons obtaining medical care from a non-enrolled provider prior to application do so when they have no reason to know that reimbursement is limited by the Regulation to care from Medicaid-enrolled providers. Thus, argue plaintiffs, the Regulation not only fails to promote the goal of protecting eligible individuals, but actually penalizes them for consequences that cannot be anticipated.

With the parties' arguments framing the issue, the Court must decide whether the Regulation is a reasonable construction of the federal Medicaid laws, insofar as it limits reimbursement during the retroactive period to eligible individuals obtaining care from Medicaid-enrolled providers. For the reasons that follow, the Court concludes that it is not a reasonable construction.

To begin, the federal retroactive eligibility statute does not, by its terms, limit reimbursement during the retroactive period to only persons obtaining care from Medicaid-enrolled providers. 42 U.S.C. § 1396a(a)(34). Nor can such an express limitation be found in any federal regulation. *See* 42 C.F.R. § 435.914 Despite the telling absence of any

such condition to reimbursement under the federal Medicaid laws, New York's Regulation adds a limitation to reimbursement when services are obtained from non-enrolled providers. *See New York City Health and Hospitals Corp. v. Perales*, 954 F.2d 854, 858 (2d Cir.) (invalidating New York regulation adding exception to Medicare Part B cost-sharing coverage for patients who were dual eligible as violative of Medicaid laws), *cert. denied*, 506 U.S. 972, 113 S.Ct. 461, 121 L.Ed.2d 369 (1992). The Regulation's added requirement makes little sense, in view of Congress' rationale for providing retroactive reimbursement. The statute's purpose is to ensure that otherwise eligible persons receive financial protection prior to application. *See* (1972 U.S.Code Cong. & Admin.News, 4989, 5099). The Regulation, however, by denying reimbursement to unwitting individuals in these instances, conflicts directly with that purpose. *See, e.g. Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981) (stating that courts may invalidate agency rulemaking that is "inconsistent with the statutory mandate or that frustrate[s] the policy that Congress sought to implement").

Second, although defendants would have us believe that the statutory language requires a reading consistent with the Regulation, the Court is unconvinced. As noted above, § 1396a(a)(34) contains no express requirement that care be rendered by enrolled providers to receive retroactive reimbursement. Rather, the only substantive limitation to reimbursement is that the "care and services [be] included in the plan." 42 U.S.C. § 1396a(a)(34). The implementing regulation confirms this reading by stating that persons are eligible "for Medicaid effective no later than the third month before the month of application if the individual [r]eceived Medicaid services, at any time during that period, of a type covered under the plan." 42 C.F.R. § 435.914 As plaintiffs correctly note, the only limitation thus relates to the *type* of service rendered, not to whom the provider may be. Further, the Report of the Senate Finance Committee is not to the contrary; the Report simply reflects the realiza-

tion that when the State makes reimbursement to an enrolled provider, the State should apply appropriate oversight. It bears emphasizing that neither the Court nor the parties have found any language—either in the Act or implementing regulations—that indicates reimbursement during the retroactive period is limited to services obtained from only Medicaid-enrolled providers.

Third, defendants' efforts to construe postapplication federal Medicaid laws, which require persons to obtain care from Medicaid-enrolled providers in most circumstances, lend no support for such a requirement preapplication. There is a plain distinction in circumstance at these stages; namely, individuals postapplication have been informed of the limitation, whereas individuals preapplication have not.

Fourth, the Court cannot agree that defendants' goal of preventing fraud transforms the Regulation into a reasonable one. While preventing fraud is a commendable goal, it cannot justify the Regulations' limitation on reimbursement when no limitation is expressed by the federal Medicaid laws. Presumably, Congress would have made such a limitation clear if it desired to restrict retroactive reimbursement as provided in the Regulation.

The Court also notes that fraud, whether individually perpetrated by the preapplicant or medical provider, or through collusion between these parties, appears particular unlikely in the situation at issue here. Preapplication individuals are unlikely to be aware that Medicaid coverage might be forthcoming, and as such are unlikely to engage in fraud. Likewise, hospitals or other facilities rendering services to such individuals have no motivation to engage in fraudulent service provision or charging practices either. To the extent that a hospital or providing doctor is more likely to be cognizant of potential current Medicaid eligibility of the preapplicant, and therefore perhaps more likely to be tempted by Medicaid fraud, two factors balance against such an occurrence. First, the providers in question here are those not enrolled currently as Medicaid providers. It is safe to assume that such providers are less familiar with the Medicaid requirements and are actually less likely to be able to predict which currently non-covered patients are actually of "preapplicant" status and therefore "good prospects" for fraud with subsequent Medicaid re-payment. Second, because indigent patients are a poor risk for re-payment of medical expenses to begin with, it is unlikely that a medical provider would make a habit of extending unneeded or unnecessarily expensive treatments to such patients in the hopes that, within the next three months, the patient would apply for and be approved for Medicaid, enabling the provider to collect on the expensive treatments. Similarly, collusion between the preapplicant and a medical provider to defraud the Medicaid system is equally unlikely. The preapplicant is simply too ignorant of the system and their status within it, while the physician or other health care provider lacks sufficient motivation to engage in such fraud where the likelihood of remuneration from the government is uncertain.

Lastly, the First Department, in *Seittelman v. Sabol*, 217 A.D.2d 523, 630 N.Y.S.2d 296 (1st Dep't 1995), addressed this identical issue. The *Seittelman* court held that the Regulation was invalid insofar as it limited reimbursement for medical services provided during the retroactive period to medical services provided by only Medicaid-enrolled providers.[1] While this decision is not binding here, the Court finds its reasoning persuasive.

In sum, the plain language of the federal Medicaid laws is clear; the laws contain no express or implied requirement that retroactive reimbursement is limited to individuals receiving care from only Medicaid-enrolled providers. Insofar as the Regulation adds such a limitation, it is an impermissible construction of the federal Medicaid Laws. The Court thus holds that the Regulation is invalid to the extent that it limits reimbursement during the preapplication retroactive period to individuals obtaining care from only Medicaid-enrolled providers.

1. This decision is on appeal to the New York Court of Appeals.

### D. Equal Protection Claim

Plaintiffs next assert that, in determining eligibility for retroactive reimbursement, the Regulation creates an unreasonable regulatory classification by treating individuals differently according to the type of provider used, in violation of the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). When, as here, no specifically protected class is implicated, the standard of review is whether the Regulation is rationally related to any legitimate government interest. *See, e.g., Pennell v. City of San Jose,* 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988).

Because the Regulation bears a rationale relationship to the end of thwarting fraud in the Medicaid system, the Court finds that the Regulation does not violate the Equal Protection Clause. *Greenstein v. Bane,* 833 F.Supp. 1054, 1075 (S.D.N.Y.1993) (recognizing fraud prevention as legitimate state interest). Although the Court has rejected defendants' argument that preventing fraud supports the Regulation as a permissible construction of the federal Medicaid laws, it has done so because the Regulation fails to comport with the Act. The inquiry under an equal protection claim only asks whether the Regulation has some rational basis. Preventing fraud thus provides sufficient reason to deny plaintiffs' claim under equal protection.

### E. Failure to Notify Claim

Plaintiffs next assert that, in two respects, defendants have violated federal and state law and plaintiffs' right to due process by failing to provide plaintiffs notice of their rights under the Medicaid laws. First, plaintiffs contend that defendants have failed to notify them of the possibility of reimbursement for expenses incurred during the three-month preapplication period. Second, plaintiffs aver that defendants have failed to provide them notice that medical expenses incurred between the time of application and receipt of a Medical card is limited, pursuant to the Regulation, to medical services rendered by Medicaid-enrolled providers. Defendants Schenectady and Albany County Commissioners, in turn, concede that they did not provide applicants or recipients written notice of reimbursement for medical expenses incurred during the preapplication period. *See* Response to Notice to Admit of Prinzo and Staszak. Defendants Prinzo and Staszak, however, do not specifically address the issue of notice between the time of application and receipt of a medical card. Defendant DeBuono, in contrast, maintains that she provided adequate notice during both the preapplication period and the period between application and receipt of a medical card.

State agencies are required to provide all applicants written information regarding (1) eligibility requirements, (2) available Medicaid services, and (3) the rights and responsibilities of applicants and recipients. 42 C.F.R. § 435.905. Additionally, "the agency must publish in quantity and make available bulletins or pamphlets that explain the rules governing eligibility and appeals in simple and understandable terms." *Id.*

DeBuono relies on several documents to support her position that she provided adequate notice to plaintiffs. She begins by citing to a 1988 administrative directive that instructs agencies to inform applicants during the eligibility interview of the possibility of reimbursement for services received during the retroactive period. Assuming state agencies complied with this directive, which plaintiffs contest by affidavit, this directive still fails to evidence that applicants received proper *written* notification regarding retroactive eligibility reimbursement. *See* 42 C.F.R. § 435.905 In apparent recognition of this defect, defendant argues that "although the [directive] did not specifically direct social services to issue such notice in writing, social service districts were free to do so and may have found it administratively convenient to do so." McCloskey Affidavit ¶ 90. Tellingly, however, defendant provides no evidence that an agency ever provided any written notification.

DeBuono next relies on further directives issued in 1995, advising agencies of their obligation to provide written notice of reimbursement pursuant to the *Seittelman* decision. This argument, however, is pure pettifoggery. Defendant neglects to disclose that it rescinded these directives following appeal of *Seittelman*. Specifically, defendant instructed in a subsequent directive: "you are not required to provide applicants with the *Seittelman* notice, nor are you required to reimburse recipients for payments made to non-MA enrolled providers during the retroactive eligibility period." Exhibit F annexed to Nichols Affidavit.

Lastly, defendant argues that it published the Regulation at issue in the State Register. Publication of the Regulation does not, however, satisfy the requirement that applicants and recipients receive written notification of their rights under the Medicaid program. *See* 42 C.F.R. § 435.905. Nor does publication of the Regulation satisfy the requirement that agencies publish bulletins and pamphlets regarding eligibility information. *Id.* But publication of the Regulation in the State Register does satisfy due process, assuming applicants for benefits have a legitimate claim of entitlement protected by the Due Process Clause. *See Perales v. Reno*, 48 F.3d 1305, 1316 (2d Cir.1995), *cert. denied*, 516 U.S. 1043, 116 S.Ct. 699, 133 L.Ed.2d 657 (1996) (citing *Lyng v. Payne*, 476 U.S. 926, 106 S.Ct. 2333, 90 L.Ed.2d 921, (1986)).

In short, the Court finds that defendants did not provide adequate notice, pursuant to their statutory duties under the federal Medicaid laws, of either the possibility of reimbursement during the retroactive period or that reimbursement of medical expenses incurred between the time of application and receipt of a Medical card is limited to medical services rendered by Medicaid-enrolled providers. However, plaintiffs' due process claim under the Constitution is denied.

**F. Class Certification**

Lastly, plaintiffs move to certify this as a class action pursuant to Federal Rule of Civil Procedure 23(c). Defendants, in turn, make several arguments in opposition. First, defendants assert that class certification is unnecessary because the Eleventh Amendment bars plaintiffs from seeking retroactive reimbursement for medical expenses incurred during the retroactive eligibility period. Second, defendants assert, in the alternative, that the numerosity requirement is not satisfied and that the proposed class parameters are overly broad.

Turning first to defendants' Eleventh Amendment argument, it is axiomatic that the Eleventh Amendment of the United States Constitution bars suits against a state in federal court unless the state consents to be sued, or Congress enacts legislation, pursuant to section 5 of the Fourteenth Amendment, overriding the state's Eleventh Amendment immunity.[2] *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The "state" for purposes of the Eleventh Amendment generally includes state agencies and state officials sued in their official capacities, but not political subdivisions. *See, e.g., Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Although the Eleventh Amendment by its terms does not bar federal courts from hearing suits brought against a state by its own citizens, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (citations omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The Supreme Court, in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714

---

**2.** The Eleventh Amendment provides:
The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.
U.S. Const. amend XI.

(1908), recognized a special exception to the rule that the Eleventh Amendment bars suits against state officials. The *Ex Parte Young* doctrine provides that a state official, acting in his official capacity, may be sued in a federal court for prospective relief based on conduct that violates federal law. *Id.; Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir.1993). This holding is based on the fiction that a state cannot authorize its officers to act unconstitutionally. *Id.*

In the present case, the plaintiffs' class-action complaint seek a judgment: (1) declaring the Regulation void insofar as it limits reimbursement of medical expenses incurred during the retroactive period to expenses obtained from only Medicaid-enrolled provider; (2) enjoining the State from further applying the Regulation; (3) declaring the decisions of the defendants denying reimbursement under the Regulation without effect; and (4) directing the State defendant to reimburse plaintiffs and all other prospective members of the class for those expenses that were disallowed solely on the basis of the Regulation.

The basic question before the Court is thus whether plaintiffs' suit seeks relief in a manner that is barred by the Eleventh Amendment. Unfortunately, the Eleventh Amendment's dividing line between permissible prospective relief and impermissible retrospective relief "is far from that between day and night. It is more like examining a subject in that half-light called the gloaming, where to identify it accurately one needs to have the instincts of Argos, Odysseus' dog, who recognized his master dressed as a beggar upon his return home after 20 years' absence." *New York City Health & Hospitals Corp. v. Perales*, 50 F.3d 129, 131 (2d Cir.1995).

Despite this half-light, several decisions provide guidance on the dichotomy between retrospective and prospective relief. In *Edelman v. Jordan*, 415 U.S. 651, 658, 94 S.Ct. 1347, 39 L.Ed.2d 662, *reh'g denied*, 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974), the Supreme Court examined applica-

tion of the Eleventh Amendment to withheld entitlement benefits. The Court, quoting from the circuit's opinion, reasoned that:

> [i]t is one thing to tell the Commissioner of Social Services that he must comply with the federal standards for the future if the state is to have the benefit of federal funds in the programs he administers. It is quite another thing to order the Commissioner to use state funds to make reparation for the past. The latter would appear to us to fall afoul of the Eleventh Amendment if that basic constitutional provision is to be conceived of as having any present force.

*Id.* at 665 (internal quotations and citations omitted). Thus, while the *Edelman* Court granted prospective injunctive relief compelling the government to comply with federal law despite any "ancillary effect on the state treasury," it denied retroactive relief requiring the government to pay welfare benefits already due. *Id.* at 1358. The Court specifically drew the boundary between prospective and retrospective relief as the date of application; those applying for benefits after the injunction received injunctive protection, whereas those applying for benefits before the injunction did not receive back payments.

In the context of Medicaid benefit cases, courts also have adopted an intuitive definition of retrospective and prospective relief. The dividing line selected is the date on which the medical services were rendered. For instance, if Medicaid services are obtained after the injunction, the State must process applications in accordance with the federal injunction as such is prospective relief. If, however, Medicaid services are obtained before the injunction, though the date of application for benefits occurs subsequently to that injunction, the injunctive order would not cover those persons who received services before the injunction date. *See, e.g., Mazzaferro v. RLI Ins. Co.*, 50 F.3d 137 (2d Cir.1995); *Kimble v. Solomon*, 599 F.2d 599, 605 (4th Cir.), *cert. denied*, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979); *Wisconsin Hosp. Ass'n v. Reivitz*, 820 F.2d 863, 867 (7th Cir.1987).[3]

---

**3.** The shortcoming of defining retroactive/prospective relief through the selection of an intui-

In the instant case, *Edelman* and its progeny control to prevent the Court from ordering retroactive payment of benefits denied to plaintiffs pursuant to the Regulation. Similarly, it prevents the Court from declaring the prior decisions of the defendants that denied reimbursement to be without effect. It does not, however, preclude the Court from declaring the Regulation void and permanently enjoining defendants from further applying it.

The question remains whether class certification is necessary for prospective benefits. The Court finds that it is an unnecessary formality; it may be assumed that defendants will apply the relief granted by the Court's decision to all persons similarly affected by the Regulation. *Berger v. Heckler,* 771 F.2d 1556, 1566 (2d Cir.1985); *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Kansas Health Care Ass'n., Inc. v. Kansas Dept. of Social and Rehabilitation Servs.,* 31 F.3d 1536, 1548 (10 Cir.1994); 7B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1785.2 (2d ed.1986). Indeed, defendants have provided assurances that should the Court issue declaratory and injunctive relief for the named plaintiffs, they would adhere to that order with respect to all potential class members. Notwithstanding, to ensure that the Court's order is enforced state-wide, the parties should submit a stipulation to this effect.

## III. CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment is GRANTED insofar as the Court declares the Regulation violative of the federal Medicaid laws to the extent stated herein; enjoins the Regulations' further enforcement; and holds that defendants did not provide adequate statutory-required notice of either the possibility of reimbursement during the retroactive period or that reimbursement of medical expenses incurred between the time of application and receipt of a Medical card is limited to medical services rendered by Medicaid-enrolled providers. Plaintiffs' motion is DENIED other-

wise. Defendants motion for summary judgment is GRANTED insofar as the Court holds that the Regulation does not violate the Equal Protection Clause; that defendants did not violate the Due Process Clause in apprising plaintiffs of their rights under the Medicaid laws; and that class certification is unnecessary. Defendants' motion is DENIED otherwise.

**IT IS SO ORDERED.**

tively significant date is that it leads to arbitrary results.